ETHERIDGE, *qui tam. &c. vs.* CROMWELL.

A party is not liable to the penalty given by the eighth section of the act to prevent and punish *champerty* and *maintenance*, if he can shew that at the time of his conveyance he was ignorant that the lands were held or claimed adversely, although he knew that he himself had no title.

Every presumption and intendment is against him who conveys land, knowing that he does not own it; but if he can satisfy the jury that *he did not know it was held adversely*, he does not incur the penalty of the statute.

Had the penalty been incurred, the conveyance having been made previous to the 1st January, 1830, the suit was properly brought, although not commenced until after the act giving the penalty was repealed, it being within the saving clause of the statute.

THIS was an action of debt under the *eight section* of the act to prevent and punish *champerty* and *maintenance*, tried at the Herkimer circuit in March, 1830, before the Hon. NATHAN WILLIANS, one of the circuit judges.

On the 17th December, 1829, the defendant executed to his son a *quit claim deed* of certain lands, of a tract belonging to the children of the wife of the plaintiff, devised to them by Michael Myers, their maternal grand father, by his last will and testament, bearing date in January, 1814, in which year the testator died. The premises devised were wild, uncultivated and unenclosed lands. On the part of the plaintiff it was proved that the defendant formerly was the owner of a farm 109 acres adjoining the tract devised by Myers to his grand children; that from 1816 to 1822 the defendant was taxed for 109 acres and no more; that in 1827 he sold his farm of 109 acres to one Stephen Carpenter, and that in *November*, immediately preceding the date of his deed to his son he was informed that Etheridge had run out the lines of the lands devised by Myers, and conversed upon the subject of such

ALBANY,
Jan. 1832.

Etheridge
v.
Cromwell.

survey. On the part of the defendant, it appeared that the deed to Myers of the land in question was not *discovered* until December, 1829, when it was *found on record* in the county clerk's office, by the attorney of Etheridge, and when communicated to him, neither he or the children of his wife appeared to know of the existence of such deed. The deed to Myers bore date in 1797, and was recorded in 1810 ; it conveyed to him a lot of land containing 380 acres. In 1811, Myers conveyed 200 acres of this tract to Joab Griswold, the husband of his daughter Anna, who entered into possession, and occupied the same until his death, sometime previous to 1814. Etheridge married his widow 15 or 16 years before the trial of this cause, and resided with his wife and her children on the 200 acres conveyed to Griswold. One of the children of Joab Griswold, who was called as a witness by the plaintiff, on his cross-examination stated that he, the witness, had frequently said that *he did not know* whether or not himself and the other heirs of his father owned the lands, part of which were conveyed by the defendant ; and several witnesses called by the defendant testified that they had known the lands conveyed by the defendant for 30 years ; that they considered the tract as a *gore,* and had frequently cut wood and timber thereon as such ; that it was sometimes called *Delancy's gore,* and sometimes *Judge Myer's gore ;* and other witnesses testified that they had heard Etheridge, the plaintiff, say that the land in question was a *gore,* and also, that he had offered to sell it. The judge charged the jury, that as the lands covered by the deed were *unenclosed wood lands,* and not in the actual possession of the owners, it was necessary that they should be satisfied that the defendant, when he gave the deed, *knew that the lands were owned by the children of Mrs. Ethridge ;* that to entitle the plaintiff to sustain the action, it was not sufficient to prove that the lands, in fact, were owned by such children ; for if the defendant did not know that fact, and *believed the lands in question to be a gore,* he was not liable for the penalty sought to be imposed upon him. The counsel for the plaintiff excepted to this charge, and requested the judge to instruct the jury that the only question for them to determine was whether the defendant *had conveyed the land, knowing that he was not*

*the owner;* that he had no title, and that neither he or those under whom he claimed had been in possession of the lands for a year previous to the deed ; and that if they found that he had conveyed, knowing, &c. that the plaintiff was entitled to a verdict. The judge refused so to charge, and the jury found a verdict for the defendant. In the course of the trial it was admitted that this suit was not commenced until *after* 1st January, 1830, and the defendant asked that the plaintiff should be *nonsuited,* on the ground that by the *revised statutes* the action for the *forfeiture* was abolished. The motion, however, was overruled. The plaintiff now moves to set aside the verdict.

ALBANY,
Jan. 1832.

Etheridge
v.
Cromwell.

*L. Ford,* for the plaintiff. The judge should have charged the jury as desired by the plaintiff, who asked nothing but what was conformable to the words and spirit of the act.* The judge acted under a misapprehension of the case of *Hassenfrats* v. *Kelly,* 13 Johns. R. 466, in which it was held that selling lands without notice of a subsisting adverse possession, would not subject a party to the penalty ; but in that case it was shewn that the defendant was the *true owner* of the land, and for aught that appeared, the plaintiff was a *mere intruder,* without claim or color of title. Here there was no pretence of title on the part of the defendant, and a more gross and palpable violation of the act cannot be conceived. If the defendant knew that he had *no title,* and had not been in possession within a year, he incurred the penalty by selling his pretended right. It was not necessary to shew that he knew the lands belonged to others, and the doctrine of the judge that the stat-

* The *eighth* section of the act is in these words : " No person shall buy or sell, or by any ways or means procure any pretended right or title, or make or take any promise, grant or covenant to have any right or title of any person to any lands, tenements or hereditaments, unless such person who shall so bar-gain, sell, covenant or promise the same, or his ancestors, or those by whom he claims the same, have been in possession of the same, or of the reversion or remainder thereof, or taken the rents and profits thereof, for the space of one year next before the said bargain, sale, covenant or promise made, upon pain that he who shall make any such bargain, sale, covenant or promise shall forfeit the whole value of such lands, tenements or hereditaments," &c. 1 R. L. 173.

ute does not apply to wild uncultivated lands, or to unenclosed wood lands, is not supported by any case, and is contrary to the policy of the law. The judge correctly refused to nonsuit the plaintiff; the penalty was incurred in December, 1829, and the right to sue for it is expressly reserved in the repealing act. 2 R. S. 779, § 5, 6.

*D. Burwell*, for the defendant. The plaintiff should have been nonsuited. The penalty is taken away, and the offence is now a misdemeanor,. 2 R. S. 691, § 6 ; allowing the penalty to remain, the suit should have been brought by the public prosecutor. The fact submitted to the jury, and passed upon by them, viz. " that the defendant believed the land conveyed by him to be a *gore*," renders it immaterial whether the charge of the judge was correct or not. A *gore* is a tract of land, lying between two other tracts which have been granted by the government, but which itself remains ungranted, the title continuing in the state. A conveyance of such lands by one having no title is no offence, within the meaning of this statute. The intent of the act was to prevent and punish the selling and conveying of a pretended title, to lands *in the possession of another*. Plowden, 88. In the case of *Teel* v. *Fonda*, 7 Johns. R. 251, the lands sold were in the *actual possession* of divers persons under claim of title ; and in *Hassenfrats* v. *Kelly*, cited on the other side, Spencer, justice, says, that to expose a party to the forfeiture of the value of the land sold, it ought to appear expressly that there was a person *in possession* claiming to own the land.

*By the Court*, SUTHERLAND, J. In *Hassenfrats, quitam*, v. *Kelly*, 13 Johns. R. 466, it was held that a person who sells and conveys land *without the knowledge* that there is a subsisting adverse possession, is not liable to the penalty for selling a pretended title, under the 8th section of the act to prevent champerty and maintenance. 1 R. L. 173, § 8. Strictly speaking, perhaps, the *decision* in that case went no farther than that in order to create the offence contemplated by that section, it is indipensable that it should clearly appear that the lands were held adversely at the time of the conveyance.

Judge Spencer, however, who delivered the opinion of the court, expressed a very decided and unequivocal *opinion* that if the lands were held adversely, yet if the vendor could shew that he was ignorant of that fact, he would not be liable to the penalty, although his deed would be void and inoperative. He puts his opinion on the ground that it was the intention of the statute to punish persons for selling. pretended rights to lands *for the purpose of maintenance,* and when it is evident that such intention did not exist, he held there could be no offence ; and in support of his opinion he refers to the case of *Partridge* v. *Strange & Croker,* Plowden, 80, 88, in which the declaration, which was upon the same statute, was held defective for the want of an averment that the bargain and sale was made for maintenance. Hale, justice, remarked in that case that the intent of the statute was, that a man should not demise or bargain his land to any *for maintenance,* except he have been in possession for a year, so that here, inasmuch as the plaintiff has not averred the bargain and lease to be made for maintenance, he has not shewn the case to be within the danger of the statute ; for this was the point of the statute. The declaration in that case was demurred to ; the defence alleged was, that the defendants had made a lease for years of certain lands, of which they or any of their ancestors were not in possession, nor of the reversion or remainder thereof, nor took the rents or profits thereof *by the space of one whole year next before the demise was made.* Chief Justice Montague said, as the matter is here declared, it shall be intended that the defendants were in possession of the land, in respect of which it is shewn that they made the lease, and he that makes a lease shall be intended in possession ; and if it be so, though they had been in possession but for an hour, the matter is out of the danger of the statute. Therefore it seems to me that here is no offence shewn to be done against the statute. They held the averment in the declaration to be merely that the defendants had not been in possession of the lands conveyed to them *for a year,* admitting or not denying their actual possession when they made the lease ; and such actual possession, though but for an hour, the court said was sufficient to authorize the de-

ALBANY,
Jan. 1832.

Etheridge
v.
Cromwell.

fendants to grant the lands. The same judge, in another part of his opinion, says, *if he who is out of possession bargains,* sells or makes any covenant or promise to part with the land after he shall have obtained possession of it, this shall be within the danger of the statute, whether he who so bargains or promises have a good and true right or title or not; and in this point, the statute has not altered the law; it was made in affirmance of the common law, and all the statute has done is, it has added a *greater* penalty to that which was contrary to the common law before; for, by the common law, he who is out of possession cannot grant or bargain his land, and if he does, the grant is void. The statute has only added a greater penalty to that which was illegal before, and to avoid such bargains or promises, *where a man is out of possession,* is the only point which the statute here remedies. And another judge holds substantially the same language, and adds, *where the party is out of possession,* there is good reason to restrain such promises and bargains, for the law presumes they cannot be made *without an intent of maintenance ;* and Montague, Ch. J. says a pretended right or title is but in one case, and that is where one is in possession of lands and tenements, and another who is out of possession claims them or sues for them ; that is a pretended right or title, whether the party making such claim have the actual right or not. Co. .Litt. 369, a, fully supports the doctrine laid down by the judges in Plowden. See also Comyn's Dig. tit. Maintenance, A. 4. If a man who has no colour of right or title sells it to another, it will be within the statute, though the conveyance by him be void. Co. Litt. 369, a.

Where the action is against the *grantee* of a pretended title, the jury must find that the grantee knew the title was pretended. 1 Leon. 166, 7. I am not prepared to say, that according to the English authorities, the grantor of a pretended title to land *must know that it is held adversely,* in order to subject him to the penalty of the statute ; but the policy of the statute was founded upon a state of society which does not exist in this country, and it is perhaps indispensable that such a construction should be given to it here as is adapted to the peculiar state of our uncultivated lands. 4 Kent's Comm.

438. 3 Cowen, 643, 4, 5. As it respects the actual owner of lands, who conveyes them in good faith without knowing that they are occupied, it would be most oppressive and unjust to subject him to the penalties of the statute; and the statute makes no discrimination between a conveyance made by one who supposes he has a right to convey, and a conveyance where the grantor knew he had no title. I am inclined therefore, to say that the penalty should not attach in any case, if the grantor can shew that he was ignorant at the time of his conveyance that the lands were claimed or held adversely. This construction is sanctioned by the case of *Hassenfrats* v. *Kelly*, already referred to, and was considered as the established rule in *Lane* v. *Shears*, 1 Wendell, 493. In that case I remark, in delivering the opinion of the court, " That the defendant is to be presumed to have known the situation of the premises, and that they were occupied by the tenant of Lane. A person who sells and conveys land *without the knowledge that there is a subsisting adverse possession* is not liable to the penalty given by the 8th section of the act for selling a pretended title; but the seller of land is in the first instance to be presumed connusant of the situation of it." 7 Johns. R. 251. 8 id. 227. 2 Caines, 183. 2 Johns. Cas. 59. If there had been any doubt as to the knowledge of the defendant of the adverse possession, it should have been left to the jury. Every presumption and intendment should be against the man who conveys land, knowing that he does not own it; but if he can satisfy the jury that *he did not know it was held adversely*, he does not incur the penalty of this statute. The charge of the judge, therefore, was correct. The jury, I think, upon the evidence, might properly have found against the defendant; but the matter of fact was properly submitted to them, and they have disposed of it. The repealing statute does not affect this suit. 2 R. S. 779.

Motion for new trial denied.