## SMITH v. FORREST.

Evidence from neighbors, occupants, or those familiar with the land in contro-
versy, that no claim of title had been set up, or made for a number of years
together by a claimant to land, is competent, as bearing on the question of
acquiesence and true ownership.

The declarations of deceased owners of land, are admissible, as to the bounda-
ries of their land, when it appears from their situation that they had the
means of knowledge and no interest to misrepresent, especially, when the
declarations are in disparagement of their title.

The declaration of a deceased owner of land, tending to show that a corner
had been " established" by him and other adjoining owners, is admissible,
although the declarant and witness were not on the land at the time it was
made, for the reason, it appearing, that the deceased declarant, had ade-
quate knowledge, and it is the best evidence the case admits of, and upon
the ground of public necesssity, and also when it is an admission against
the party's interest.

Deceased surveyors ancient plans, minutes, or field books, clearly describing
and identifying the lots and bounds in controversy are admissible as evi-
dence.

TRESPASS, *quare clausum*, Warren H. Smith, Adm'r. against
James N. Forrest, plea—general issue.

This suit was commenced by Jeremiah Smith, who owned the lot
of land in question, and who died pending the suit.   The defendant
owned fifty acres off the west end of lot twenty four in Northfield,
and also extending south and taking off the west end of another
strip of land laying south of said lot, of uncertain width.   The said
lot twenty-four, and the said strip were ancient lots and were surveyed
and layed out by the original proprietors of Canterbury, of which
Northfield was part.   The surrounding land was also laid out by them
and lotted and a plan of all said lots was made by them, and said
laying out and plan were recorded in the records of said proprietors
as early as 1781, and used as evidence in this trial.

o

## PLAN.

### N.

The plaintiff had owned seventy-five acres of the same lots, extending across both said lots, and bounded west by the defendant's land, and so extending far enough east to make his seventy-five acres; but he had sold to one Elias Abbott, and conveyed to him by deed, seventeen acres off the north end of his said strip, extending the whole width from east to west. The question in dispute in this case was, as to the line between the parties, running north and south. The defendant claimed to a line on which was a fence the whole length from north to south between the defendant's land and said Abbott's and the plaintiff's, with bounds at the north-east and north-west corners of the defendant's land, as he claimed it, and also a bound at the south-west corner of said Abbott's land, in the line of the fence. The plaintiff claimed to a line some six rods west of the other line, on which was no fence and no corner bounds, though the evidence tended to show there were some marked trees on this line. Several witnesses, " each of whom had been, at some time, the owner and occupant, either of the defendant's land or of the seventeen acres

sold by Smith to Abbott as aforesaid," who had known the line and bounds as claimed by the defendant, for many years, and had known of no other until recently, after describing the lines and bounds, as known by them, were asked, subject to the plaintiff's exception, whether they had ever known or heard of any controversy concerning this line or these bounds until this controversy arose. They all answerd in the negative.

Gardner S. Abbott was called-as a witness, by the defendant, who was a grandson of Elias Abbott, to whom the seventeen acres were deeded by Jeremiah Smith, in 1817, and testified, subject to the plaintiff's exception, that his grandfather, while he owned the seventeen acres, and prior to the year 1830, pointed out to the witness, on the ground, the bounds around the seventeen acre place; to wit, the north-west corner and the south-west corner of his land, which were both in the line as now claimed by the defendant. The same witness also stated, subject to the plaintiff's exception, that his father, whose name was also Elias, in 1861, told the witness that he (the father) and Jeremiah Smith (the plaintiff's intestate) were present when the bound at the *south-west* corner of the *seventeen* acres was established, to which the plaintiff excepted. The witness further stated that they (witness and his father) were not at the bound, nor on the land, at the time of this conversation, but that they were talking about the chestnut stake corner (the one in the line now claimed by the defendant.) It also appeared that the witness, and his father, and grandfather, had lived on the lot twenty-third, adjoining lot twenty-four, and near and adjoining this seventeen acres; that the father and grandfather had been well acquainted with this piece of land, had cleared a part of it and occupied it, in connection with lot twenty-three, as a farm; that his grandfather died in 1841, and his father in 1852. Verdict for the defendant, and the questions of law were reserved.

*Shirley*, for defendant, as to the declarations of Abbott, contended :

1st. It is clear that if Elias Abbott, jr., had been living, it would have been competent for him to have identified the bound and stated the time and place of its erection. The whole objection is to the word " established." It is evident, that a witness may give language and acts, or the substance as it lays in his mind. It is well settled that it would have been competent for Abbott, to have testified that they "agreed to" or "fixed upon" this as a "boundary" or even that he "understood" by their conversation, that they "agreed" where the line was, or that it was "pronounced" or "proclaimed" "the corner of the lots." *Sawyer* v. *Fellows*, 6 N. H. 107 lines 14, 15; *Eaton* v. *Rice*, 8 N. H. 378 lines 12, 13; *Maxwell* v. *Warner*, 11 N. H. 568 line 21; *Dudley* v. *Elkins*, 32 N. H. 79-80; *Steere* v. *Little*, 44 N. H. 614 lines 8-10; *Adams* v. *Blodgett*, 47 N. H. 223.

A general statement of fact is not opinion. Minds differ. The statement of a witness is not to be rejected, because from mental con-

stitution, he gives the cream of a transaction without the whey or verbiage. The word "established" with reference to boundaries, is in common use by text writers, the court, and the mass of the people.

2d. Gardner S. Abbott did not assume to give the precise words used by his father, but only the substance. If plaintiff did not think it for his interest to cross examine the witness at length about it, it was no fault of ours. It does not lie in his mouth to object, because the details were not given.

3d. By looking at 1 Greenl. Ev. (10 ed.) sec. 134, counsel will see, that sometimes, "if the declarant is known and appears to have stood *in pari casu* with the party offering his declarations so that he could not have been personally examined if living, as to the facts of which he speaks," this is no valid objection to the admissibility of his declarations.

He also cited and commented at length upon *Tappan* v. *Tappan*, 36 N. H. 122 ; *Adams* v. *Blodgett*, 47 N. H. 223 ; *Wendell* v. *Moulton*, 26 N. H. 43-61 ; *Fellows* v. *Fellows*, 37 N. H. 77 ; *Dudley* v. *Elkins*, 39 N. H. 83, 85 ; *Ivat* v. *Finch*, 1 Taunt. 141 ; *Wendell* v. *Abbott*, 45 N. H. 35 ; *Marshall* v. *Pierce*, 12 N. H. 132 ; *Monell* v. *Foster*, 33 N. H. 386 ; *Wallace* v. *Goodall*, 18 N. H. 454, 14 East. 335, 6 East. 209-215 ; *Wallace* v. *Fletcher*, 30 N. H. 436 ; 1 M. & S. 689 ; *Great Falls* v. *Worster*, 15 N. H. 420-421 ; *Smith* v. *Powers*, 15 N. H. 551 ; *Melvin* v. *Marshall*, 22 N. H. 382 ; *Adams* v. *Stanyan*, 24 N. H. 407 ; *Morse* v. *Emery Mer. Co.*, Dec. term 1866, and cases cited. *Steere* v. *Little*, 44 N. H. 619 ; *Gibson* v. *Poor*, 21 N. H. 443-4 ; *Shepard* v. *Thompson*, 4 N. H. 273 ; *Davis* v. *Fuller*, 12 Vt. 189, 1 Gr. on Evid. 10 Ed., sec's 129, 136, 103, 104, and notes. *Goodwright* v. *Moses*, Coop. 593-594 and other authorities.

*Pike & Blodgett*, upon the same point.

Two questions arise :

1st. Is the declaration of the kind that is legally admissible ? 2d. Is it to be excluded because it was not made *on the ground?*

1. Is the declaration of the kind that is admissible ? The plaintiff says this testimony is not admissible because the declarant could not have so testified if living, and gives no other reason. On the contrary, we say, the defendant could have made this statement. The word *"established"* is clearly used in the sense of *made*. The primary meaning of establish is "to set;" "to set and fix firmly." The statement therefore, is not *opinion* but *fact* and hence admissible. The fact of the statement that Smith was present, cannot change the character of the testimony. The plaintiff does not object to the word *bound* used by the witness, but this will exclude the testimony, if the construction contended for by them is successful, because it embraces an opinion equally as much as *"established."* It is well settled in this state, that specific declarations as to a spe-

cific fact are receivable in evidence. *Smith* v. *Powers*, 15 N. H. 563. This act of Smith, (even if he had been living) was admissible as the act of a person in possession limiting his possession. *Smith* v. *Powers*; *Jackson* v. *Bard*, 4 John. 230; *Pike* v. *Hayes*, 14 N. H. 19. The fact that Smith was present when the bound was made, implies an agreement between the declarant and Smith. Smith's declarations being competent, his acts are also. The declaration is also competent because it gives the history of this boundary. Statements of surveyors and persons assisting with them, in making and running lines and putting down bounds are admissible after their decease.

2. But the main question is, whether it is necessary that the declaration should be made on the land, and the bound or line pointed out. We are aware that this would seem to be necessary from some of the cases. *Melvin* v. *Marshall*, 22 N. H. 380. In this case the bound was pointed out by the declarant and the court state this as one of the qualifications of the admission of this kind of evidence. This qualification is not named in other cases and the rule is stated without it. See *Shepard* v. *Thompson*, 4 N. H. 214; *Pike* v. *Hayes*, 14 N. H. 19; *Adams* v. *Stanyan*, 24 N. H. 405. It is nowhere held that the declaration *must be made on the land*. This question has not been raised in this state heretofore. There is no reason for such a condition as this unless it be to make certain of the identity of the bound or line in dispute. This is not needful; the identity may be established beyond doubt by reference or description. In *Van Dusen* v. *Turner*, 12 Pick. 532, the reason of the requirement is that the declaration is part of the *res gestae*. The admission of such testimony has not been put on that ground in this state, and nowhere else but in Massachusetts. The commencement of the rule in this state admitting such testimony is in *Shepard* v. *Thompson*. The English rule is there laid down that " in questions upon a boundary between parishes or manors, as in a customary right, or on parochial or manorial customs, declarations made by deceased persons, who from their situation had the means of knowledge, and no interest to misrepresent, are admissible in evidence." 1 Phillips' Ev. 259; In Greenl. on Ev. sec. 145, it is also said that the rule applies only to matters of public interest. But in *Smith* v. *Powers*, 15 N. H. 563, this rule is fully adopted and applied to *private rights*.

This question has recently been raised in Vermont and distinctly settled. In *Powers* v. *Silsby*. 41 Vt. 288, it is held that " the declarations of a deceased person as to the location of a disputed boundary, otherwise admissible, are not rendered inadmissible by the fact that they were made off the land, and because the line referred to was not actually pointed out as shown." The law in that state stood like ours prior to that decision. *Wood* v. *Willard*, 37 Vt. 377. In this case the declarations are held to be admissible when made upon, or in the immediate vicinity of the boundary referred to, and the same is pointed out. In *Powers* v. *Silsby*, after

stating the rule laid down in *Wood* v. *Willard*, the court say : "Counsel do not question or controvert it, but insist that the case in hand is not within the principle of that decision, because, in this case, the declaration objected to was made off the land, and because the line referred to was not actually pointed out or shown.    This relates rather to the effect of the declaration as evidence, than to its admissibility.    If the relative of the deceased person who made the declaration, was such, either in respect to the lots in question, or the range line dividing them, that it might be inferred that he had a knowledge of. the boundary line, and he was not led by his interest to misrepresent in regard to it, and by his declaration he so pointed it out as to indicate to the mind of the witness the line he referred to, we are unable to understand why the evidence, upon the facts, was not admissible.    *    *    *    And we do not understand why its admissibility should depend upon the fact that the declaration was made upon the land, and in connection with actually showing or pointing it out.    That he could do off and away from the premises as well as upon or near them ; and the ancient line, boundary or monument could be made equally certain by reference or description as to its locality, and as situated with reference to these known existing lines or monuments, as by actually showing or pointing out where it was.    This is often and always done in court and is the only way, ordinarily, in which a jury are informed as to the relative location of land lines which are in controversy."

*C. C. Rogers*, for plaintiff, referred the court to 1 Greenleaf Ev. 12th Ed. pages 166 & 167 ; *Shepard* v. *Thompson*, 4 N. H. 213 ; *Great Falls Co.* v. *Worster*, 15 N. H. 437 ; *Smith* v. *Powers*, 15 N. H. 546 ; *Adams* v. *Stanyan*, 24 N. H. 405 ; *Adams* v. *Blodgett*, 47 N. H. 219.    In these cases the doctrine of *Shepard* v. *Thompson*, is adhered to.    1. It must appear that the deceased paty had knowledge.    2. He must have no interest to misrepresent.

Upon the main point, in regard to the testimony of G. S. Abbott, as to what his father paid to him, that he, (the father) was present with Jeremiah Smith, (the plaintiff's ancestor) when a certain bound was established, the counsel contended such testimony was clearly incompetent.

If the father of the witnesses had been on the stand, it would have been incompetent for him to have stated, that a certain bound had been " established" at a certain place, upon a certain time.    But, he would have been required to state what was said and done, leaving it to the jury to find from such sayings and doings, whether or not there was an establishment of the bound.    Declarations of a deceased party, when incompetent, cannot be made competent by being detailed by a living witness.    If such should be held the rule, there are many cases, in which it would be fortunate, rather than a misfortune to the parties, to have their witnesses die before their cases should come to trial.

NESMITH, J.    The original action of trespass, *quare clausum*, was

commenced by the father of the plaintiff, Jeremiah Smith, now deceased, and the dispute between the parties involves the inquiry as to the true location of their divisional line, running north and south, separating the defendant's fifty acres from the remainder of lot No. 24 in Northfield, which remainder the plaintiff claims to own. It appears that plaintiff claims to hold and occupy to a divisional line some six rods west of the line insisted upon by the defendant; and this strip of land, six rods in width, is the chief matter in controversy in this case.

1   The case finds that several witnesses, who had known the line claimed to by defendant for several years, and who had known of no other dividing line until recently, were inquired of by defendant, subject to plaintiff's exception, whether they had ever known or heard of any controversy concerning this line, or these bounds, until this dispute arose.   The witnesses answered in the negative.   This kind of testimony is of course not conclusive, and liable always to be controlled by evidence of a higher nature; still it is regarded competent in controversies of this nature.   In *Fellows* v. *Fellows*, 37 N. H., 78, Bell, J., says, there seems to be no valid objection to the testimony of the neighbors, as to the absence of averse claims.   Any circumstances tending to show that the possession was held by the permission or acquiescence of others would weigh heavily against the occupant.   The absence of such circumstances ought surely to weigh in his favor.   Evidence that no claim of title has been set up, or made for a number of years together, by a claimant to land, is competent, as bearing on the question of acquiescence or ownership in the several claimants.   See other authorities quoted by defendant's counsel.   The exception to this evidence cannot prevail.

2.   Gardner S. Abbott was also a witness in behalf of the defendant. He was the grandson of Elias Abbott, to whom a seventeen acre lot, being part of lot No. 24, was conveyed by Jeremiah Smith, the owner and plaintiff's ancestor in the year 1817.   Subject to plaintiff's exception, said Gardner testified that his grandfather, while owner of said seventeen acre tract, and sometime prior to the year 1830, pointed out to the witness on the ground the bounds of said seventeen acre piece, especially the *north-west* corner, and the *south* corner of his land, which were both coincident with the line as now claimed by the defendant.   Said Elias has since deceased.   At the time this evidence was furnished to the witness, said Elias was the owner and occupant of the land, and must have had the means of becoming acquainted with the facts as testified to by the witness.

The general presumption and fair legal intendment are, that any man knows the situation of his real property, both as to its boundaries and possession.   * *Morse* v. *Emery*, Merrimack county, 1866, not reported; *Hassanfiats* v. *Kelley*, 13 John. 468; *Etheridge* v. *Cromwell*, 8 Wend. 635.   Then such testimony is competent on the other ground, that the declarations of deceased owners and occupants are admissible as to the boundaries of their lands, where it appears from their situation that they had the means of knowledge, and no interest

to misrepresent, and when such declarations were in disparagement of their title.   *Smith* v. *Powers*, 15 N. H. 546 ;  *Adams* v. *Stanyan*, 24 N. H. 405 ;  *Morrill* v. *Foster*, 33 N. H. 388.

It evidently would have been the interest of Abbott, while owner, to have claimed as much of lot No. 24 as the plaintiff now claims, and he would have been the gainer if he could have rightfully extended his line as far as plaintiff claims his line should extend, but he evidently limited his possession directly against his interest to the line as claimed by defendant now.   The declarations of said Elias are, therefore, to be received as in disparagement of his then existing title, and, therefore, binding the plaintiff as his privy in estate.   1 Green. Ev.· § 189 ; *Daggett* v. *Shaw*, 5 Met. 223 ; *Currier* v. *Gale*, 14 Gray 506 ;  *Morrill & als.* v. *Titcomb & als.*, 8 Allen 100.

3.   The witness, Gardner S. Abbott, also stated, subject to plaintiff's exception, that his father, whose name was also Elias, sometime in the year 1861, told him that he, the father, and Jeremiah Smith, the plaintiff's intestate, and the original plaintiff in this suit, were present, when the bound at the south-west corner of the said seventeen acre tract of land was *established*.   But when this declaration was made, the witness said that he and his father were not at the bound or on the land.   They were talking about the *chestnut stake bound,·* being the same one now in the *line*, to which the defendant claims.   The said Elias died in 1862.

The word *establish* is objected to by plaintiff as being an *indefinite* term.   The ordinary meaning of the word is to *settle certainly*, or *fix permanently*, what was before uncertain, doubtful or disputed.

The declaration is also objected to as having been made to the witness, when the parties were not on the land.

As already shown, the witness, (Gardner S. Abbott,) had ample opportunity to become familiar with the bounds of the seventeen acre tract of land. His father Elias, as well as his grand father had for a long time been owners, and occupants thereof and knew the bounds thereof.   The plaintiff's counsel in his argument, in commenting upon the leading case in this state, where it was first decided that hearsay testimony of this kind should be extended in its application to *private* as well as to *public* rights meaning the case, *Shepard* v. *Thompson*, 4 N. H. 213,  states correctly our rule, that two things are necessary in order to make the declarations of deceased person competent evidence as to boundaries.

1st. It must appear that the deceased party, or declarant had knowledge.

2d.  He must have no interest to misrepresent.  In the trial of cases, where this kind of testimony is resorted to, the aforesaid guiding principles should exist and govern the court and jury.   It is a general presumption that owners of land know their boundaries, but sometimes they do not, and when they are ignorant of them, of course their statements in relation to them, whether made on, or off their land are of but little or no consequence, but when such boundaries are clearly known, or established by those in interest, then they

generally can communicate accurate knowledge, whether their statements be made at the boundary, or at a distance from it.   It will be for the court and jury to determine the weight to be attached to evidence of this nature, or whether the parties have the means of knowledge, or have in any way been misled, or whether they had any motives to misrepresent by a statement too favorable to their own pecuniary interests.   It seems to us, that because the statements representing the south-west boundary of the seventeen acre tract was made, by the father to the son, when not at the bound, or off the land, forms no solid objection to the admissibility of such testimony.   In the case *Powers* v. *Silsby, & a.*, 41 Vt. 289 ; the court say, if the relation of the deceased person, who made the declaration was such, either in respect to the line, or monument in question, that it might be fairly inferred, that he had a *clear* knowledge of them, and that he was not led by his interest to misrepresent in regard to them, and by his declaration he did so point them out, as to *distinctly indicate to the mind of the witness*, the line or monument he referred to, we are unable to understand why the evidence was not admissible.   In the case before us, it is quite apparent, that the *minds of both father and son met at precisely* the *same bounds,* and that their statements communicated to the jury, were founded on an accurate knowledge of its character and locality.   As already suggested, the evidence tends to show that the location of the bound, where the father states it was established, was in disparagement of the declarants title, therefore it conveys or implies no purpose to misrepresent.   Had the father been alive, he could have been a witness in this case, and his testimony going to show how the original plaintiff and himself had *established* and put down the chestnut stake, at the south-west corner of the seventeen acre piece, and in a line as claimed to by the defendant, must have been received as an important admission against the plaintiff's present claim to carry his line farther west.   Witnesses frequently use language, signifying results and conclusions, without stopping to explain in detail the different steps by which they are enabled to state or reach such conclusions.   The witness was permitted to state, that the *corner* before alluded to, was *established* in the presence of the parties, or owners interested to have a corner.   The great *fact* impressed on the witness' mind by his deceased father, was stated in the presence of the jury.*   Giving the ordinary natural meaning to the word *establish*, the language of the witness, would be understood by the jury.   The plaintiff in argument objects that the witness did not state the precise mode, or manner by which the corner was *established*.   He did not state that the chestnut stake, was for the first time driven down into the ground, or that it was there before, and for the first time then was fully as sented to as the future corner of the seventeen acre piece of land.   It may

---

* And in the able and instructive opinion of the supreme court of Vermont, (Peck J.) in *Webb* v. *Richardson*, 42 Vt., 472–474.

have been there for many years, and may have received for the first time, the open, willing assent of the original plaintiff, or the fact may have been that the stake was then and there placed in the ground, recognized or *established* for the first time, as a corner to their lands. In any view, we can take of the testimony, the defendant makes out an important fact for his case, and if doubts still rested over this point, it was for the plaintiff to have insisted at the trial upon more light, or a more full explanation of all the circumstances, attending this part of the case. It seems to us, it is now too late for him to complain of his own negligence in not eliciting from the witness all possible information he possessed; we cannot set aside this verdict, and thereby give a reward to the sin of omission, of which the plaintiff appears to have been guilty. It seems to us that the testimony on this point was admissible from necessity, as the best the case admits of, upon similar ground, that the declarations of deceased persons are received as testimony, ancient plans of lots, showing the original lotting and boundaries assigned, also ancient minutes of surveyors, which were made by capable independent surveyors, having no interest to misrepresent, and which have been preserved, and are produced from reliable sources, may likewise be used on trial, when the boundaries of lots to which said surveys refer come in question. The authorities on this point are collected in · * *Morse* v. *Emery*, Mer. County, not yet reported.

*Judgment on the verdict.*