This was an action of ejectment for lot No. 30, in the town of Wilmington.
The lessors of the plaintiff claimed under a grant to JohnWhatson made in 1735, and a deed from John Watson to Joshua Grainger, executed in 1737. The lessors of the plaintiff alleged that John Whatson and John Watson were the same person, and to prove the identity they introduced, after objection to it on the part of the defendant, the register's books, and exhibited nineteen deeds from J. Watson and J. Wattson to different persons in the town of Wilmington, and then proved that the descendants of Joshua Grainger, Jr., the grandson of Joshua Grainger, Sr., claimed and occupied lots on Market Street, alleged to have been conveyed by the same deed as that under which the lessors of the plaintiff claimed. They also proved that no such person or family as that of John Whatson ever was living within the knowledge of the witnesses in Wilmington. They, then, after objection to it, introduced (181) Iredell's Revisal, and showed therein the title of an act passed in 1739 to change the name of Newton into that of Wilmington. They then contended that, from these facts, and especially from its not being shown by the defendant, from the production of the register's books or otherwise, that there ever were any deeds to or from John Whatson, the jury ought to presume the identity of John Whatson and John Watson, and after the lapse of one hundred years the jury should be instructed that aprima facie case of identity was made out. The court instructed the jury upon this point that they must inquire into the fact of the identity; that the lessors must prove it to their satisfaction, and that, if they had not so proved it, they could not recover; but that if it were established to their satisfaction that John Whatson, the grantee, was the same person who, under the name of John Watson, sold to Joshua Grainger, the difference of names would make no difference in the title.
The lessors of the plaintiff, in order to locate the grant under which they claimed, after having shown that from lapse of time no corner or line tree could be found, and that no person could be found who had ever heard of a line tree or corner of the grant, offered to prove by Dr. DeRosset, who had lived in the town of Wilmington eighty years, that for sixty or seventy years — ever since the witness was able to recollect — it was a matter of common reputation and notoriety in Wilmington that the town of Wilmington, including the lot now sued for, was covered by the grant under which they claimed. This evidence was objected to by the defendant and rejected by the court. *Page 136 
After a verdict for the defendant the lessors of the plaintiff moved for a new trial, upon the ground that the court had misdirected the jury upon the question of identity, and had (182) improperly rejected the evidence of Dr. DeRosset. The motion was overruled, and judgment given, from which the lessors of the plaintiff appealed.
The first exception to the judge's charge is upon the evidence as to the identity of John Whatson and John Watson. The plaintiffs claimed title to the land in question under a grant issued in 1735 to one John Whatson. The deed of conveyance to his ancestor, Joshua Grainger, in 1737, was executed by John Watson. To show that these two names belonged to one and the same person — that is, the identity of John Whatson and John Watson — the plaintiffs proved that no such person or family as Whatson ever was living in the town of Wilmington, within the knowledge of the witnesses. They offered in evidence the register's books, which, after objection by the defendant, were received by the court, and from them showed nineteen deeds from John Watson and Wattson to different persons in the town of Wilmington; and they further proved that the descendants of Joshua Grainger, Jr., the grandson of Joshua Grainger, Sr., claimed and occupied lots on Market Street, alleged to have been conveyed by the same deed as that under which the plaintiffs claimed. The lessors of the plaintiff then introduced Iredell's Revisal, and showed therein the title of an act, passed in 1739, to changed the name of Newton into that of Wilmington. This latter evidence was also objected to. The counsel for the plaintiffs moved the court to instruct the jury that from the foregoing evidence and the entire absence of any testimony showing any deed whatever from John Whatson, and after the lapse of so long a time a prima facie case of (183) identity was made out. His Honor refused so to charge, but instructed the jury that the lessors of the plaintiff must prove it to their satisfaction, and if they had not so proved it they could not recover. I concur with his Honor, both in receiving in evidence the books of the register and in his instruction to the jury upon the question of identity. The books were offered, not to prove title in the lessors of the plaintiff, but to show that such deeds had been made and memorials of them preserved among the public records, and that they contained no copy of a deed executed by John Whatson, as circumstances *Page 137 
which, taken in connection with others, might assist the jury on the question of identity. The fact that a man by the name of John Watson had conveyed portions of the same land to several persons, though collateral, was connected with the transaction, from which an inference might be reasonably drawn as to the disputed fact, particularly after the lapse of so long a time. But it was an inference which the jury alone could draw, and it was properly left to them.
In connection with the above exception was the reception of the title of the act of 1739 in evidence. It became important to the plaintiffs to prove that the name of the town of Newton had been changed to that of Wilmington, for the conveyance to Joshua Grainger, the ancestor of the lessors of the plaintiffs and under whom he claimed, was of lots in the former. For this purpose he offered in evidence the title of the act in question. This was admitted by the court, though objected to by the defendant. The act, from the title, appeared to be a private one, of which the court could not, judicially, take notice, and the title was no evidence of its existence or contents. But upon referring to Davis' Revisal we find that the change of name was effected by an act passed in 1756, and which was public in its nature. The act of 1739, passed for that purpose, was, with many others, repealed by an order in council of the King. Afterwards, yielding to the representations of the (184) colonial authorities, his Majesty authorized and directed "the Governor of the Province to give his assent to any act which shall be passed by the Council and Assembly for re-establishing the several towns, precincts and counties," etc. In consequence of the permission thus given, the act of 1756 was passed. It enacts "that the several divisions, precincts and districts of this Province, which heretofore have belonged to the several and respective counties and towns, aforesaid, before the repeal of the before-enacted act of Assembly, shall and they are hereby directed to be re-established in counties and towns, by the several and respective names by which each division, etc., was known and denominated at the time of the repeal of said acts." Davis' Revisal, ch. 9. This act not only changed the name of Newton into that of Wilmington, but enacted and established the boundaries of several counties. It was, therefore, a public law, of which the court was bound to take judicial notice. The error into which his Honor fell was unimportant, and, in a measure, unavoidable. The act of 1756 is not brought forward in any of the Revisals subsequent to that of Mr. Davis', and that is to be found in few private libraries. *Page 138 
The question, however, most pressed upon the Court here was the admissibility of the testimony of Dr. DeRosset.
The object of his evidence was to complete the title of the lessors of the plaintiffs to the lot in question by showing that it was out of the State. To do this it was important, not to show the metes and bounds of the Whatson grant, but that the town of Wilmington was on it. This, it appeared to me, had been already sufficiently done. The grant to Whatson, after locating the land, describes it as "called Newton." The deed to Grainger in 1737 describes the grantors, John Watson and his wife, as "living in Newton" of Newtown, and conveys (185) a number of lots, and then conveys "twenty-five acres of the island opposite to the said town," leaving no doubt that the lots conveyed were in the town of Newton. In 1756 the name of the town was changed to Wilmington, which it has borne ever since — a period of ninety-three years. It is then shown to mathematical demonstration that Wilmington is on the land covered by the Whatson grant. But it was thought necessary by the plaintiffs' counsel to fortify this position by showing that such had been the common rumor on this subject for many years past. Dr. DeRosset, who had lived in the town for eighty years, was tendered to the court to prove that sixty or seventy years — indeed, as long as he could recollect anything — it was the common report and belief that Wilmington was covered by the Whatson grant. To pave the way for this testimony, the plaintiffs had shown that from lapse of time no corner or line tree could be found, nor could any person be found who had ever heard of a corner or line tree of the grant. It appears to me that the evidence of Dr. DeRosset was competent, and ought to have been received. From necessity, our courts have departed from the strict rules of the common law in questions of boundaries. Sasser v. Herring, 14 N.C. 340. It is now the well-established law of this State that the declarations of a single deceased witness, as to a line or corner, are admissible evidence as common reputation. This case goes a step further, and is justified on the same principle, to wit, necessity. The exclusion of such testimony would, in many cases of lots in our ancient towns, and of land adjacent to them, put it out of the power of the owners to make title; and this would necessarily result where the boundaries are natural objects of such a perishable nature as most of ours are. While it is admitted that there is no direct precedent for the admission of such (186) testimony as that in question, it is very clearly within the reasoning of the Court in Mendenhall v. Cassells, 20 N.C. 43. There the plaintiff offered to prove "that it was the *Page 139 
reputation of the neighborhood, where the land in controversy lay, that the premises in question were in the boundaries of the grant under which he claimed." This testimony was rejected; the plaintiff had made no survey or attempt to survey the grant, and relied solely on the report. In assigning their reasons, the Court say: "We receive it (that is, hearsay) in regard to private
boundaries, but we require that it have something definite to which it can adhere, or that it should be supported by proof of correspondent enjoyment and acquiescence." Both of these conditions were absent in the case of Cassells, and both are present here. The grant to Whatson is for 640 acres of land in New Hanover Precinct, "called Newton, and opposite the thoroughfare to the Northwest River," and it called for a line along the river to the first station. The land said to be covered by it was, and had been for upwards of one hundred years, in different portions, in the possession of those who claimed under it. Newton was a town in 1735, when the grant issued to Whatson, which called for it as embraced in its boundaries. In 1756 the name was changed to Wilmington, which it has borne ever since. Various lots, both in Newton and Wilmington, were conveyed to different persons, and those conveyed to Grainger, or some of them, in 1737, were taken possession of by his descendants. It is a matter of history that Wilmington is, and has been for many years, a populous town, possessing a large shipping interest, and of much commercial importance. The two requisites, then, pointed out by the case of Cassells as being either of them sufficient to authorize the admission of hearsay evidence of this kind, exist in this case. The testimony of Dr. DeRosset was, then, clearly competent. If received, it would have proved that for seventy years it had been and was the general rumor and common report that Wilmington was located on the land conveyed by the Whatson grant. (187) Long and notorious possession is very strong presumptive evidence of right, and in questions of boundary authorizes the inference of any fact which can properly be inferred to make such possession consistent with right. Norcum v. Leary,25 N.C. 54. It must be recollected that the inquiry was not as to the metes and bounds of the Whatson grant, but to show that the town of Wilmington was on the ground covered by it, and thereby to prove that the State had parted with its title. If the lot sued for, instead of being vacant, had been enclosed, and in the possession of the defendant or other individuals for sixty years, could there by any doubt a jury would have been instructed to presume a grant? This case bears a strong analogy to that class of cases which, by writers upon the law of evidence, *Page 140 
is treated as forming an exception to the general rule excluding hearsay evidence. The exception is that when the subject in controversy is of public or general interest, then hearsay evidence, as to the boundary, under certain restrictions, is admitted. Where all the citizens of the State are interested, the interest is public; where the whole are not interested, but it affects a less, though still a large, portion of them, the interest is general, as in questions arising out of right of common, Weeks v.Sparks, 1 Ma. and Sel., 690. That was an action of trespassquare clausum fregit. The defendant pleaded in bar a prescriptive right of common in the locus in quo; the plaintiff replied, prescribing in right of his message to use the ground for tillage. It appeared that many persons, beside the defendant, had a right of common there, and for that reason hearsay evidence of the plaintiff's right was admitted, it being derived from persons conversant with the neighborhood. But the case most nearly resembling this is that of Rogers v. Wood, 2 Barn. and Ad., 245. There the question was whether the city (188) of Chester anciently formed part of the county Palatine. Testimony of reputation was offered, and rejected not because in itself not competent, but because it proceeded from persons who had no particular knowledge of the fact, that is, of the reputation. And in the Duke of Newcastle v. Broseboro, 4 Barn, and Ad., 273, such evidence was received. The question there was whether the castel of Nottingham was within the hundred of Broseboro. The case before us is one of private right, and the cases referred to are, therefore, no authority, but they are so similar in their circumstances that the same reasoning upon which hearsay evidence was admitted in them applies with equal force here. 1 Greenleaf Ev., 217.
I should hold that the existence of a town for the length of time that Wilmington has existed, and for a much shorter time, would be legal evidence from which a jury would be directed to presume a grant to the land on which it was located — that the State had parted with its title.
Dr. DeRosset lived in the town of Wilmington, but the case — and I am not permitted to look beyond it — nowhere states that he owned any real estate in it. He was, therefore, a competent witness to testify to the facts to which he was called, as he had no interest involved in the controversy. 1 Phil. Ev., 55, 57. And the evidence was competent.
His Honor erred in rejecting the testimony, and there ought to be avenire de novo. *Page 141