## YOW v. HAMILTON.

(Filed November 15, 1904).

1. BOUNDARIES—*Evidence—Declarations.*

In an action to determine the boundaries to land, the declarations made relative thereto *ante litem motam* by a disinterested deceased person are admissible, though the surveyor thereof is a witness.

2. WITNESSES—*Evidence—Declarations—The Code,' sec. 590.*

An interested witness may testify to declarations of a deceased person relative to boundary lines.

3. INSTRUCTIONS.

The failure of a trial judge to instruct upon any given phase of the evidence is not error unless he was specially requested to do so.

4. COSTS—*Supreme Court—Transcript—Appeal—Supreme Court Rule 22.*

An appellant will be taxed with the cost of unnecessary and irrelevant matter in the record in the case on appeal.

ACTION by Rufus Yow against J. F. Hamilton and wife, heard by *Judge C. M. Cooke* and a jury, at July Term, 1904, of the Superior Court of RANDOLPH County. From a judgment for the plaintiff the defendants appealed.

*Robbins & Robbins* and *O. L. Sapp,* for the plaintiff.
*Brittain & Gregson,* for the defendants.

WALKER, J. This action was brought to recover real property. The plaintiff claimed under Beersheba Hill and the defendants under Hannah Stout, who in 1891 were tenants in common of a tract of land which in that year they divided. In order to make an equal partition of the tract a survey was made and the dividing line was run and marked by the sur-

veyor, and deeds were executed in accordance with the boundaries as ascertained by the survey. The parties afterwards differed as to the true location of the dividing line and this suit was brought to settle that difference.

In order to show where the dividing line is the plaintiff introduced as a witness M. F. Laughlin, who testified as to material declarations made by his father, D. J. Laughlin, to him as to certain trees which were in the dividing line. This testimony met with an objection from the defendants, which was overruled and they excepted. The grounds of the objection are (1) that it is not an ancient boundary, and hearsay evidence is therefore incompetent; (2) that W. C. Hammer, the surveyor who ran and marked the line, is now living and was examined as a witness in the case, and that hearsay evidence is not admissible if there is a living witness, as his evidence is of course the best and, under the rule as to primary and secondary evidence, the best evidence must always be produced.

Neither of the grounds of objection is tenable and the evidence was clearly competent. The error lies in failing to distinguish between evidence by reputation, which is competent only as to ancient boundaries, and hearsay evidence, as it is called, which consists in the declarations of deceased persons and is competent as to those of more recent origin. Both kinds of evidence are admissible in all controversies relating to boundaries when confined within their proper limits. "In the latter, namely, hearsay evidence, it is necessary as a preliminary to its admissibility to prove that the person whose statement it is proposed to offer in evidence is dead; not on the ground that the fact of his being dead gives any additional force to the credibility of his statement, but on the ground that if he be alive he should be produced as a witness; whereas, it is manifest that in respect to evidence by reputation, this preliminary question cannot arise." *Dobson v.*

*Finley,* 53 N. C., 495; *Shaffer v. Gaynor,* 117 N. C., 15; *Westfeldt v. Adams,* 131 N. C., 379. It may be further said concerning hearsay evidence or declarations as to boundaries that there are three prerequisites to the competency of such evidence, (1) that the declaration must come from a disinterested person, (2) the declarations must have been made *ante litem motam,* and (3) the person who made them must be deceased, so that he cannot be produced and heard in person as a witness. *Smith v. Headrick,* 93 N. C., 210. That such declarations are competent to show where lines and corners are, when the preliminary facts have been found, has been frequently decided by this Court. *Harris v. Powell,* 3 N. C., 349; *Gervin v. Meredith,* 4 N. C., 635; *Hartzog v. Hubbard,* 19 N. C., 241; *Dancy v. Sugg,* 19 N. C., 515; *Hedrick v. Gobble,* 63 N. C., 48; *Toole v. Peterson,* 31 N. C., 180; *Caldwell v. Neely,* 81 N. C., 116; *Huffman v. Walker,* 83 N. C., 411; *Mason v. McCormick,* 85 N. C., 226; *Bethea v. Byrd,* 95 N. C., 311, 59 Am. Rep., 240. We refer especially to the clear statement of the rule by *Henderson, C. J.,* for the Court, in *Sasser v. Herring,* 14 N. C., 340: "We have in questions of boundary given to the single declarations of a deceased individual as to a line or corner the weight of common reputation, and permitted such declarations to be proven under the rule that in questions of boundary hearsay is evidence. Whether this is within the spirit and reason of the rule it is now too late to inquire. It is the well established law in this State. And if the propriety of the rule was now *res integra* perhaps the necessity of the case arising from the situation of our country, and the want of self-evident *termini* of our lands, would require its adoption. For although it sometimes leads to falsehood, it more often tends to the establishment of truth. From necessity we have in this instance sacrified the principles upon which the rules of evidence are founded." In *Whitehurst v.*

*Pettipher,* 87 N. C., 179, 42 Am. Rep., 520, *Smith, C. J.,*
after stating it to have been well settled by a series of decis-
ions commencing in the year 1805, "That, in questions of
private boundary, the declarations of disinterested persons
since deceased made before any controversy has arisen are
admissible to show their location," proceeds as follows: "The
declaration is received under the conditions mentioned as
evidence, instead of the sworn statement for which it is sub-
stituted, when the party making it is dead and the evidence
would otherwise be lost. It is manifest that if the declarant
were alive, and would be allowed to prove the fact to which
the declaration relates, the declaration itself may be proved
after his death." In *Smith v. Headrick, supra,* the same
learned Judge says: "A series of decisions (commencing at
the end of the last century and ending in 1884 with *Fry v.
Currie,* 91 N. C., 436), has fully established the doctrine of
the admissibility of parol declarations to show private bound-
aries when they proceed from aged and disinterested persons
since deceased and are made *ante lilem motam.* These are
the three essential conditions to the competency of this form
of hearsay or traditionary evidence in questions of disputed
boundaries. The opportunities which the declarant had may
be inquired into in determining the *value* but not the *compe-
tency* of the declaration and, as such, properly furnish a
subject for comment before the jury."

Counsel for defendant contended that as Mr. Hammer is
living, his is the best evidence of the true location of the line.
This we think is a total misconception of what is meant in
this connection by the term "best or primary evidence." It
refers not to the testimony of other witnesses who are living
and can be produced, but to the testimony of the deceased
witness himself, if he were now living and could testify
under oath and cross-examination, and to his declaration as
being the next best or secondary evidence, as by reason of

the death of the declarant his sworn testimony cannot be had. The rule requiring the production of the best evidence excludes only that evidence which itself indicates the existence of more original sources of information. But where there is no substitution of evidence but only a selection of weaker instead of stronger proofs, or an omission to supply all the proofs capable of being produced, the rule is not infringed. It is intended by it to prevent the introduction of any which, from the nature of the case, supposes that better evidence is in the possession of the party. Thus understood, the rule is essential to the pure administration of justice, and having been adopted for practical purposes it must be applied always so as to promote the ends for which it was designed. 1 Greenleaf on Evidence, sec. 82.

The defendants objected to the testimony of the witness R. S. Craven as to declarations of D. J. Laughlin concerning the location of the dividing line made to him which were similar to those made to the witness M. F. Laughlin. The objection was based upon the ground already considered and upon the additional ground that R. S. Craven was an interested witness, as the plaintiff claimed from him, and, further, because the defendants derived their title through Claudia Hill Craven, now deceased, who was the wife of the witness, and defendant contends that for these reasons he is disqualified under section 50 of The Code. We are unable to perceive how this can be so. The case comes neither within the letter nor the spirit of that section. It is there provided that an interested witness or a person from through or under whom a party to be affected by the event of the action claims, shall not testify concerning a personal transaction or communication between the witness and a person then deceased under whom the party against whom he is introduced as a witness claims. Surely no such state of facts is presented here, and there is no testimony having even the slightest appear-

ance of being forbidden by the law. Clark's Code (3 Ed.), sec. 590, and notes; *Bunn v. Todd.,* 107 N. C., 266. The witness testified only to what a disinterested person told him, one who had no interest in or connection with the suit or the matter in controversy and under whom no claim was made by defendant. We fail to see how the fact that the witness was the husband of Claudia Hill Craven, under whom the defendants derived their title, disqualified him. He did not testify to the declarations of his wife but to those of D. J. Laughlin and the objection was addressed solely to the latter. Such evidence has heretofore been admitted without any contention that it was incompetent under section 590 of The Code. *Whitehurst v. Petlipher,* 87 N. C., 179; *Huffman v. Walker,* 83 N. C., 411. The objection is therefore manifestly untenable. The remaining exception is that his Honor failed to caution the jury that the hearsay evidence as to the location of the dividing line was not entitled to as much weight as the direct evidence of W. C. Hammer, who testified in person as to the true location of that line. When an appellant complains that the Judge omitted to give a charge upon any given phase of the evidence, the rule, which has some exceptions not applicable here, requires him to show that the Judge was specially asked to give the desired instruction. *Patterson v. Mills,* 121 N. C., at p. 269, where the cases on this trite subject are carefully collected by the present *Chief Justice* who wrote the opinion of the Court in that case. It appears in this case that there was no special prayer for the instruction and that the objection was clearly waived. We extract the following statement from the case: "There were no requests for special instructions by either the plaintiff or the defendants. His Honor fully instructed the jury as to the contentions of both parties. There was no request made by either party for his Honor to put his charge in writing. The defendant did not except to any failure of his Honor to

charge on any particular phase of the case until making out his case on appeal." It is true the Court did not, in so many words, tell the jury that the testimony of W. C. Hammer was entitled to more weight than that of M. F. Laughlin and R. S. Craven, but even if he did not, and conceding that it would have been proper to have done so, the defendants' objection to the inadvertent omission comes too late.

The plaintiff moved in this Court to tax the appellant with the costs of unnecessary matter in the record and case on appeal under Rule 22. It is unnecessary to pass upon this motion, as the plaintiff wins in the suit, but we again call the attention of the members of the bar to this important provision. Unnecessary and irrelevant matter increases the costs and encumbers the record, sometimes producing confusion and thus preventing a proper and intelligent understanding and consideration of the case. We would have granted the motion if our judgment had been the other way. In all other respects the record is prepared in strict compliance with the statute and the rule of this Court. It contains a special assignment of errors at the end of the case on appeal, which is an essential part of the record and is therefore required in all cases. If proper reference is made in each assignment to the page of the record where the exception upon which it is based will be found, it constitutes a most valuable aid to counsel in the argument and to this Court in the consideration and decision of the case. The observance of this requirement is a matter of the first importance. We find no error in the rulings of the Court to which the defendant has taken exception.

No Error.