## LEVI B. CHILD v. EMERA KINGSBURY.

*Evidence. Declarations. Constructive Possession. Practice.*

H. & K., deceased, were well acquainted with the lot lines in town, and especially acquainted with the lots, the location of the division line of which was in dispute. H. had owned both of said lots, and K. had owned one of them. Neither was interested to misrepresent as to the true location of said line, or to locate it other than in its true place. *Held*, that under these circumstances, their declarations concerning the location of said line, made upon or near it, were admissible in evidence, although it might, perhaps, be fairly claimed that they were interested in the land at the time the declarations were made.

When the defendant took a deed of his lot, in 1837, his grantor passed to him the minutes of a survey and division of great lot 41 into quarter lots, of which the defendant's lot was one, dated November 28, 1815, in the handwriting of C., a surveyor, and signed by him. *Held*, that said minutes were admissible as evidence of claim of title, and that, C. being dead, they were, perhaps, admissible the same as an oral declaration by C. to the same effect would have been.

Occupation of land is a fact. The effect of it, when its nature and extent are shown, is a matter of law. A witness may testify to the fact of occupation, and its extent as to time and space, without stating the particular acts of which it consists.

Constructive possession of land adjoining a line acquiesced in, is sufficient to bind the adjoining owner, if continued a sufficient length of time.

If there is no evidence to warrant a charge upon a particular point, it is not error for the court to omit to charge upon such point.

TRESPASS *qua. clau.* Plea, the general issue, and trial by jury, September term, 1872, Ross, J., presiding.

The parties were owners of adjoining lots, except four acres and a half reserved from the plaintiff's lot by Benjamin Hinman, as hereafter stated, and the question was as to the location of the division line between said lots. It appeared that prior to 1800, said Hinman was the owner of both lots, having acquired title to the plaintiff's lot from the original proprietor ; that on the 14th of December, 1822, he conveyed said last-mentioned lot, by warranty deed, to Joel S. Richardson, " Except four and a half acres to be taken off at the north end, next to Clyde River " ; that said Richardson quit-claimed the same to Linus Patch, and Patch conveyed the same to the plaintiff, by warranty deed dated May 31, 1823, said reservation being expressly made in each of said last-mentioned deeds. It also appeared that said Hinman conveyed the defendant's lot to Charles Kingsbury, the defendant's father, on the 4th of January, 1811, and that said Kingsbury conveyed the same to the defendant on the 30th of October, 1837. The plaintiff claimed, and gave evidence tending to prove, that a line of spotted trees, northerly of, and cornering upon, Clyde River, was the original northerly line of his lot, and southerly line of the defendant's lot. The defendant claimed, and gave evidence tending to prove, that Clyde River was the original division line between said lots; but if not, that it had become the line by the acquiescence, from about 1815 to within a year or two of the commencement of this suit, of the parties and their grantors, and of the said Hinman and his heirs, who owned said four acres and a half; and that if any of the plaintiff's lot laid north of the river, he had gained title thereto by adverse possession—by fencing it in with a pasture of his lying westerly thereof, and by sugaring on it, and cutting sugar-roads, wood-roads, timber and wood on it, and by using it generally as his own, under a claim of ownership. The four and a half acres reserved by said Hinman as aforesaid, were never severed from the rest of the

lot, and no conveyance thereof was shown to have been made by him.

The plaintiff admitted that the said Hinman was well acquainted with the original lot lines in Derby, and had surveyed some ; and that he was especially acquainted with the lots in controversy at a very early period ; and that he was deceased. The same admissions were made in regard to Charles Kingsbury, except that he did not survey. The defendant was allowed to show, against the plaintiff's exception, that said Hinman told the plaintiff, when on the plaintiff's lot attempting to survey out the four acres and a half, that Clyde River was the north line of the plaintiff's lot, and also to show, that on another occasion, when the defendant, within a year or two after he took his deed, wished to clear a piece of land west of, and adjoining, his lot, and while they were at, or near, the corner of the lots in controversy, the said Hinman and Charles Kingsbury both said that Clyde River was the division line between said lots.

Jotham Cummings, deceased, was admitted to have been a surveyor, and to have made surveys in Derby as early as from 1800 to 1825. The defendant was allowed to prove by the plaintiff, against the plaintiff's exception, that the plaintiff had heard that said Cummings had run out the lots bordering on Derby pond, or road, and lying between there and Salem pond, and divided great lot 41 into quarter lots, of which the defendant's lot was one. The defendant was also allowed, against the plaintiff's exception, to read in evidence minutes of a survey of these lots, purporting to have been made and signed by said Cummings, dated Derby, Nov. 28, 1815, having first shown that the same were in the handwriting of said Cummings, and that Charles Kingsbury gave the same to the defendant when he conveyed the lot to him as aforesaid. There was no evidence tending to show that said minutes were brought to the knowledge of the plaintiff till about the time of the commencement of this suit. Said minutes showed the southern boundary of said great lot 41 to be Salem pond and Clyde River.

The defendant was allowed to read from the deposition of W. G. Stearns, who had lived in Derby from 1825 to 1854, and had

8

knowledge of these lots, the following sentence : " Emera Kingsbury always occupied west of Lewis Wilson's west line to Clyde River, and north of Salem Pond, from 1836 or 1838 to 1854, and his father occupied it before him ;" to which the plaintiff excepted.   It appeared that Lewis Wilson's lot was next east of the tract in dispute, and that said tract was north of Clyde River and the outlet of Salem pond.   Henry Hinman, a son of Benjamin Hinman, was allowed, against the plaintiff's exception, to testify as follows :

" I always was very well acquainted with plaintiff's and defendant's farm.   All the knowledge I had was, that it was always supposed Clyde River was the line of lots.   Father owned plaintiff's lot, and sold it to Richardson.   Heard father say the south bank of Clyde River was the boundary line of the 4½ acres reserved.   He claimed that from my earliest recollection to his death.   Father never claimed anything north of Clyde River as belonging to the 4½ acres —never heard any one claim that till recently—this was made by Col. Child."

The court instructed the jury on all the questions arising in the case, fully, and to the satisfaction of the plaintiff, except that, in explaining to the jury how a line other than the true line, might become the line between parties by fifteen years continuous acquiescence, the court told the jury that neither the parties nor their grantors need have been in the actual occupancy of the lots, or of the lots to said line, in order to establish such a line between them by acquiescence ; to which the plaintiff excepted. The plaintiff also excepted because the court, in charging in regard to the defendant's acquisition of the disputed tract by adverse possession, failed to tell the jury that the defendant would acquire title to no more of said tract than he actually occupied. The court was not requested to so charge, and no claim was made in argument that the defendant had not acquired title by adverse possession to the whole of said tract, if he had to any part thereof ; and the court did not regard the evidence as having raised any such question.

*A. D. Bates*, for the plaintiff.

We insist that it does not sufficiently appear that Benjamin Hinman or Charles Kingsbury had actual knowledge of the line

in dispute, to admit their declarations ; nor are the facts such as to warrant any such inference. They were wild lots, and never occupied by either of them. Furthermore, the case shows that Benjamin Hinman was interested at the time of making all the statements as to the line in dispute—he owning a 4½ acre reservation, concerning which there was a dispute between him and the plaintiff, the location of which would be affected. It also appears that Charles Kingsbury was interested. Having represented to the defendant at the time of selling and conveying his lot, by the survey given him, that said lot extended to the river, he was interested to sustain such representation. There should be actual knowledge, and no interest. *Wood et al.* v. *Willard et al.* 37 Vt. 384 ; *Powers* v. *Silsby et al.* 41 Vt. 288.

That the plaintiff had heard that Jotham Cummings had run out the lots as stated, was mere hearsay ; and being at about the time of the commencement of this suit, was inadmissible.

The testimony in the case as to what Harry Hinman always supposed as to the line in dispute, was improperly admitted. It is not to be inferred that the effect of this testimony was corrected by the charge. *Wood et al.* v. *Willard et al.* 36 Vt. 83.

The testimony of W. G. Stearns was improperly admitted. It was a general and conclusive statement, covering the whole time required by law to gain title by adverse possession, and was, in fact, a mere statement of his own conclusions, and not a statement of acts done upon the land. This case is entirely different from *Kidder* v. *Kennedy et al.* 43 Vt. 717. In that case, the evidence was limited to the facts by the judge ; in this, it must have been received as proof of the occupancy. If inadmissible, no exception being taken to the charge, does not remedy the error, as held in *Wood et al.* v. *Willard et al.* 36 Vt. 83. The instructions as to acquiescence were clearly wrong. *Crowell* v. *Bebee,* 10 Vt. 33 ; *Clark* v. *Tabor,* 28 Vt. 222.

As to adverse use, the plaintiff occupying a part of his lot, was constructively in possession of the whole, unless actually occupied by the defendant ; and this should have been explained to the jury.

*Edwards & Dickerman,* for the defendant.

The declarations of Benjamin Hinman and Charles Kingsbury, were admissible evidence. *Powers et al.* v. *Silsby et al.* 41 Vt. 288 ; *Wood et al.* v. *Willard et al.* 37 Vt. 377 ; *Miller* v. *Wood et al.* 44 Vt. 378 ; *Daggett* v. *Shaw*, 5 Met. 223 ; 1 Greenl. Ev. 171, § 130, p. 189, note, §§ 145, 146, and note ; *Great Falls Co.* v. *Wooster*, 15 N. H. 412, 437 ; *Smith* v. *Powers*, 15 N. H. 546, 564 ; 2 Phil. Ev. Cowen & Hill's notes, 630, 631, 632, 634, 635 ; *Van Deusen* v. *Tenney*, 12 Pick. 532 ; *Higley* v. *Bidwell*, 9 Conn. 447 ; *Boardman* v. *Reed's Lessees*, 6 Pets. 341.

As to the second exception, the survey was so ancient, it can only be proved by reputation. Traditionary evidence is admissible, from the nature and necessity of the case ; and farther. the evidence objected to simply proved the fact that the witness had heard of the survey ; it did not prove the survey, nor was it introduced for that purpose. It was proving such notice to the plaintiff as should put him on inquiry as to what that survey was, and, with other evidence, tended to show an acquiescence in certain boundaries. But hearsay evidence is frequently admissible, when introduced as merely collateral, introductory, or incidental to, or in illustration of, the testimony given by the witness. 2 Phil. Ev. Cowen & Hill's notes, 562, (ed. 1839) ; *Miller* v. *Wood et al.* 44 Vt. 378.

The minutes of the Jotham Cummings survey were admissible in evidence. 1 Greenl. Ev. 190, note ; 1 Swift Dig. 792 ; *Welch* v. *Barrett*, 15 Mass. 380 ; Am. Law Reg. Jan. 1871, 63 ; Am. Law Reg. Sept. 1871, 601 ; 1 Greenl. Ev. §§ 141, 142, 143, 144 ; *Tolman* v. *Emerson*, 4 Pick. 160.

The passage objected to in Wm. G. Stearns's deposition was properly admitted.

There was no error in the charge of the court as to establishing the line by acquiescence. *Clark* v. *Tabor*, 28 Vt. 222 ; Angel Limit. § 394.

As to the exception taken to the failure of the court to charge as detailed in the exceptions, the question has been so repeatedly decided as to become elementary. *Webb* v. *Richardson*, 42 Vt. 465 ; 2 Phil. Ev. Cowen & Hill's notes, 366, 597, (ed. 1839).

The survey bill of Jotham Cummings shows the extent to which the defendant claimed. It was commensurate with his deed, and bounded lot 4, conveyed by said deed. The survey bill was handed to him with the deed from Charles Kingsbury, as declaratory of the boundaries of lot 4, and under this he entered into possession. The survey bill limits the defendant's claim of possession, and although not recorded, is just as effectual in limiting the extent of his claim as though recorded. *Doe d. Pearsal* v. *Thorp*, 1 D. Chip. 92; *Brown* v. *Edson et al.* 22 Vt. 357; *Crowell* v. *Bebee*, 10 Vt 33; *Hubbard* v. *Austin*, 11 Vt. 129; *Spear* v. *Ralph*, 14 Vt. 400; *Jackway* v. *Barrett*, 38 Vt. 316; Angel Limit. §§ 400, 401.

The opinion of the court was delivered by

WHEELER, J. I. The plaintiff's counsel insists that there was error in admitting evidence of declarations of Benjamin Hinman and Charles Kingsbury, deceased, because their knowledge of the line about which their declarations were made, was not sufficient, and because they were interested about it. The case shows that the plaintiff admitted on trial that both these persons were well acquainted with the original lot lines in Derby, and especially acquainted with the lots in controversy at a very early period. The case also shows that each had owned land adjoining the boundary which they spoke concerning. This admission and statement shows such connection of these persons with the boundary, and the land about it, as to leave it very fairly to be inferred that they had actual knowledge concerning the boundary, and to bring the evidence of their sayings very clearly within the rule, in this respect, governing this kind of evidence.

The case does show that these persons had been interested in this boundary before they made the declarations, and perhaps it shows enough so that it may fairly be claimed that they were so interested at the time they were shown to have stated in regard to it. But however this may be, the case does not show that they were interested to misrepresent in regard to what they said about it. It does not appear that any one was claiming to so locate the boundary as to restrict the land of either, nor that

either was so situated as to desire to have it located anywhere but in its true place, nor that in anything either said, he was speaking in subserviency to any wish on his part to maintain any one particular location of the line over another. There are cases, it is true, that would exclude such declarations as these, although they would admit those of deceased persons disinterested in every respect. The chief justice, in the learned opinion in *Wood* v. *Willard et al.* 37 Vt. 377, states the rule to be, to admit the declarations of those deceased persons shown to have had sufficient knowledge, not interested to misrepresent, but not requiring that they should be wholly disinterested in the subject. In *Smith* v. *Powers*, 15 N. H. 546, the declarant appears to have been so situated that he was interested in the subject of the declarations, but not so as to be considered interested to misrepresent about it. His declarations were held admissible, and the decision is referred to with approval in the opinion before mentioned. The declarations of deceased persons so situated, appear to have been held admissible in several cases cited in note 87, pages 219, and following, of 1 Phil. Ev., with notes. In *Miller* v. *Wood et al.* 44 Vt. 378, Gaius Briggs appeared to have been interested in the lands about the line in controversy, but, having deceased, his declarations concerning it were admitted in evidence without question. The general rule admitting evidence of declarations of deceased persons of competent knowledge, is not questioned in this case, and we think that the evidence admitted by the county court falls within it, as understood and practiced upon in this state.

II. The evidence as to what the plaintiff had heard about Cummings's survey, appears to have been introductory merely, and not material or important.

The original survey, in connection with evidence that it was passed from the defendant's grantor to the defendant at the time he conveyed the land, was proper evidence of claim of title. *Kidder* v. *Kennedy et al.* 43 Vt. 717. Perhaps, as Cummings, the surveyor, was dead, it was admissible the same as an oral declaration by Cummings, to the same effect as the survey would have been. *Oatman* v. *Andrew*, 43 Vt. 466.

III.   There was no error in admitting the passage objected to in the deposition of Stearns.   Occupation is a fact.   The effect of it, when its nature and extent are shown, is a matter of law. The witness stated the extent of this occupation as to time and space, but did not undertake to state any legal conclusion from it   *Kidder* v. *Kennedy*, *supra.*

IV.   That part of the charge wherein the court stated that neither the parties nor their grantors need have been in actual occupancy of the lots, in order to establish the line by acquiescence, is not shown to have been erroneous.   It is not claimed but that there was evidence to warrant this charge, if the principles of law would warrant it; but it is claimed that the rule of law laid down was erroneous.   In *Clark* v. *Tabor*, 28 Vt. 222, it was directly held that constructive possession of land adjoining a line acquiesced in, would be sufficient to bind the adjoining owners to that line, if continued a sufficient length of time.

V.   There was no error in the failure to charge, that is complained of, as there was no evidence to warrant any charge in that direction.

Judgment affirmed.