Cheshire, }
Nov. 4, 1908. }

### KEEFE *v.* SULLIVAN COUNTY RAILROAD.

A declaration by a person since deceased, who was so situated as to have the means of knowledge and had no interest to misrepresent, is competent evidence upon a question of boundary, although not made upon the land; and an objection that the declarant was the owner of the premises goes to the weight of the evidence and not to its competency.

The introduction of immaterial evidence, the sole effect of which was to mislead and confuse the jury, may furnish cause for setting aside a verdict.

An engineer who has made a survey for the purpose of ascertaining the location of a boundary may testify as to the data he has used, the work done in pursuance thereof, and where his survey shows the point in question to be; but his opinion as to the true location of the disputed line is not admissible.

Whether a given subject is one concerning which an expert witness may express an opinion is a question of law.

A copy of an engineer's plan of lands in not admissible in evidence until the non-production of the original is satisfactorily explained.

WRIT OF ENTRY, to recover possession of a tract of land in Walpole. Plea, the general issue. Trial by jury and verdict for the defendants. Transferred from the October term, 1907, of the superior court by *Chamberlin*, J.

*Joseph Madden, Leonard Wellington,* and *Davis & Davis* (of Vermont), for the plaintiff.

*John E. Allen* and *Albin & Sawyer,* for the defendants.

BINGHAM, J. The plaintiff and the defendants are adjoining owners of land. The location of the easterly line of the plaintiff's lot and the westerly line of the defendants' right of way is in dispute. The plaintiff claims it is located some four to six feet east of the line where the defendants built a high fence in 1904, and the defendants claim that the high fence is on the true line.

The right of way was surveyed and laid out in 1847. Its westerly line as then surveyed is the plaintiff's true east line. There was evidence that in 1870 the defendants built a fence some six feet east of the one which they erected in 1904; that they were maintaining it at that place when the plaintiff purchased his lot in 1882; that they continued to do so down to 1888, when they double-tracked their road and put in a side track and two switches opposite the plaintiff's property; and that it was then broken down or buried in the process of raising the tracks and widening the road-bed.

In 1874, one Torpey was foreman in charge of the fences and tracks on the section which passes the plaintiff's land. He was then about sixty years of age and had been foreman for some five years. At that time he owned the premises now owned by the plaintiff, and in the presence of one Wessul, a witness for the plaintiff, stated that the fence (meaning the one put up in 1870) was the west line of the right of way. At the time of the trial Torpey was dead, and the plaintiff offered his declaration in evidence as that of a person who was familiar with things pertaining to the defendants' property and likely to know where the boundary line was, and as an admission; but upon the suggestion of the defendants' counsel, that the statement concerned the declarant's own land and that the Central Vermont Railroad was then operating the defendants' road as lessee, the court excluded the testimony until it should be shown that the party making the declaration had authority to make it.

It also appeared that for a series of years just before and after the plaintiff purchased his land, one Powers was foreman in charge of the fences and road-bed on this section, and at the time of trial was dead; and the plaintiff offered to show that before he purchased his land, Powers, when upon the premises of the defendants, pointed out to him the fence erected in 1870 as the west line of the right of way. This evidence was offered upon the ground that the declaration was that of a person having knowledge of the boundary, made while upon the property and in charge of it. It was excluded and the plaintiff excepted.

The defendants now contend that the evidence above referred to was properly excluded, and for the following reasons: (1) Because the declarations were offered solely as admissions, and could not be received as such for the reason that neither Torpey nor Powers was shown to be an agent of the defendants, and if they were, that it did not appear they possessed authority to bind the defendants; (2) because neither of them was shown to be an owner of land as to the boundaries of which their declarations related and were material evidence—that the declarations of deceased owners only were admissible.

But the first position, that the declarations were offered solely as admissions, cannot be sustained. It clearly appears that the offers were made upon two distinct grounds: (1) as declarations of deceased persons who presumably knew where the division line between the plaintiff's and defendants' property was, and (2) as admissions binding upon the defendants. As admissions, the plaintiff does not now contend but that they were properly excluded, and such is undoubtedly the law. *Clough* v. *Company, ante,* 84. But as declarations of deceased persons, he contends that both were admissible; that proof of ownership of land by the declarant is material only as bearing upon the question whether the person making the declaration presumably knew the location of the boundary in regard to which he undertook to speak and which was material to the issue; that such proof is but a species of evidence bearing upon the question of knowledge, the want of which may be supplied by other evidence of equal weight; that as to Torpey, the defendants' counsel admitted at the trial that he was the owner of the land now owned by the plaintiff, from which it would follow that he presumably knew its bounds, independently of the proof that he was the person in charge of the defendants' road-bed and fences; and that as to Powers, proof of ownership was unnecessary, it appearing that he had for many years had charge as foreman of the defendants' road-bed and fences on their right of way past the plaintiff's premises, and therefore presumably knew its bounds.

In *Adams* v. *Stanyan,* 24 N. H. 405, 417, the law upon this question is stated as follows: " The declarations of deceased persons who were so situated as to have the means of knowledge, and had no interest to misrepresent, are competent evidence upon a question of boundary, whether the same pertains to public tracts or private rights." It is true that in that case the declarant was the owner of land, and that the location of one of its bounds was material evidence upon the question of the location of the line between the parties to the suit. But it is apparent that the court regarded the fact of ownership merely as evidence disclosing that the declarant was " so situated as to have the means of knowledge." The same view is presented in *Lawrence* v. *Tennant,* 64 N. H. 532, 541, where Judge *Blodgett* says: " The interests of F. Sanborn and B. M. Towle, as the respective owners of adjacent lots, the common boundary of which was unquestioned, showed a strong probability that they had knowledge of that boundary." And in *Lane* v. *Hill,* 68 N. H. 275, it was held that the declarations of a testator as to the contents of a lost will were admissible to prove its contents, clearly recognizing that proof of probable knowledge on the part of a declarant may be satisfied by other evidence than the ownership of land. Judge *Parsons* there says ( *p.* 281): " The

objection to the evidence is that it is hearsay, not open to cross-examination, and not given under the sanction of an oath. The declaration, however, is that of a person now deceased, having the means of knowledge without interest to misrepresent, and is the best evidence of which the case is capable. *Betts* v. *Jackson*, 6 Wend. 173. It is difficult to see on what ground the reason of the admission of the evidence of declarations of deceased persons in cases of disputed boundary, which is put upon the ground that it is the best evidence of which the case is capable, does not apply to cases like the present. *Lawrence* v. *Tennant*, 64 N. H. 532; *Nutter* v. *Tucker*, 67 N. H. 185. To admit the declaration of a deceased person in one class of cases because it is the best evidence of which the case is capable, permitting the jury to judge of the interest of the declarant as bearing upon the weight of his testimony (*Lawrence* v. *Tennant*, *supra*), and to exclude the declaration of the deceased person in this case, would be to establish a particular rule of evidence for a special class of cases, for which no good reason can be given." To the same effect, see *Smith* v. *Powers*, 15 N. H. 546, 563; *Lawrence* v. *Haynes*, 5 N. H. 33; 2 Wig. Ev., *s.* 1563; 1 Gr. Ev., *s.* 140 *a.* The declaration of Torpey was not rendered inadmissible because it was made off the land and the boundary referred to was not pointed out (*Lawrence* v. *Tennant*, *supra*, 542; *Smith* v. *Forrest*, 49 N. H. 220, 237), nor on the ground of interest because he was a former owner of the plaintiff's land. The objection of interest goes to the weight of the evidence and not to its competency. *Nutter* v. *Tucker*, 67 N. H. 185; *Wood* v. *Fiske*, 62 N. H. 173; *South Hampton* v. *Fowler*, 54 N. H. 197, 200.

In 1847, a line of road known as the Bellows Falls branch, connecting with the main line of the defendants' road several hundred feet south of the plaintiff's premises and extending southwesterly across the Connecticut river to Bellows Falls, Vermont, was constructed. In 1881, stone bounds were set along the road on lines claimed by the defendants to be the center lines of the rights of way, as surveyed and laid out in 1847 and 1849. They were set 1,000 feet apart, beginning on the branch line at the northeasterly end of the bridge over the Connecticut river, thence in a northerly direction along that line to the main line, and thence on the main line several miles north of the plaintiff's premises. In support of their contention, and subject to the plaintiff's exception, the defendants called one Clark, who worked for them as a civil engineer in 1881 on these lines; and in reply to the question, "Did you set bounds—what did you do with reference to setting bounds along the line of the Sullivan County Railroad?" he answered: "I made a survey from what is now the iron bridge, along the track through what they call Chapin's switch, along up

by Dutchman's crossing, following the track up to Charlestown and ultimately continuing it to Windsor." The witness also testified that the center line of the new bridge is on the center line of the old one, and that the center line of the bridge is the center line of the track, except for a distance at the south end of the bridge, which is on a curve."

The materiality of this evidence is not apparent, and unless supplemented by other evidence it would seem that its only effect must have been to mislead and confuse the jury. It does not appear that the stone bounds were set along the line which the witness surveyed, or if they were, that the line he surveyed was the center line of the defendants' right of way on the branch laid out in 1849, or of the right of way on the main line as laid out in 1847; and while the tracks may have been so constructed that their center lines coincided with the center lines of the rights of way, the fact whether they were so constructed past the plaintiff's premises depends upon proof, of which, so far as this case discloses, there was none.

There was a curve in the original lay-out of the main line, known in the case as the 2.30 curve, and one of the questions in dispute was as to where it commenced. The plaintiff's evidence was that prior to the time he bought his land and when the road had but a single track, the curve began some distance south of the southeast corner of his land and at Elm street; and that later, when the double track was put in, it was changed and began further north and opposite the southeast corner. Upon this question the defendants called certain witnesses who qualified as civil engineers and were allowed to testify, subject to the plaintiff's exception, where in their judgment the point of curvature commenced, and also whether in their judgment the fence erected in 1904 was upon the true line between the plaintiff's land and the defendants' right of way. This was error. The location of the true line between the parties and the place where the curvature began were not subjects in regard to which the opinions of engineers could be given in evidence. Although an engineer's knowledge gained from study and experience in his profession, taken in connection with the data furnished by the plan of 1847, would aid him in making a resurvey of the defendants' right of way and in ascertaining the location of its west boundary, nevertheless it is difficult to see why a jury may not be capable of judging whether the bound thus located is the true bound, without the aid of the opinion of the engineer upon the question, the data and details of the resurvey having been laid before them. And what is true of the location of the west boundary is true of the point of the commencement of the curve.

In *Leighton* v. *Sargent*, 31 N. H. 119, 133, it is said: "When it is supposable that jurors can form a correct judgment or opinion without the aid of the opinion of others, from facts stated, the opinions of others are not, as a general rule, to be received in evidence." We think this is the rule applicable to this case, and we are confirmed in this view of the law by the method commonly pursued in the examination of witnesses who have qualified as engineers. According to this practice, an engineer who has made a survey for the purpose of ascertaining the location of a disputed boundary is required to state the data made use of in his survey, the work done in pursuance thereof, and where his survey shows the bound or point in question to be located upon the ground. Where such a course has been pursued, it would not seem that a jury would be likely to prove incapable of forming a correct judgment as to the location of the true bound, without the aid of the opinion of the engineer.

The finding of fact in the superior court, that the subject-matter in regard to which the engineers were allowed to give their opinions as experts was such as to make expert testimony admissible, is unimportant. Whether a given subject is one concerning which an expert may express an opinion is a question of law. *Jones* v. *Tucker*, 41 N. H. 546, 549; *Dole* v. *Johnson*, 50 N. H. 452, 458. In the latter case it is said: "When a witness is offered as an expert, three questions necessarily arise: (1) Is the subject concerning which he is to testify one upon which an opinion of an expert may be received? (2) What are the qualifications necessary to entitle a witness to testify as an expert? (3) Has the witness those qualifications? The first two questions are matters of law; the third is matter of fact."

Prior to 1904, one Williams made a survey of the railroad in front of the plaintiff's land and embodied his work in a plan. The introduction of a copy of this plan, against the plaintiff's objection and without showing that the original could not be produced, was error.

The testimony of Tidd, that in 1890 or '91 he set out an elm tree twenty-one feet west of the fence posts on the line between his land and the defendants' west line of their right of way, was properly received as tending to show where the old fence was located.

It is not deemed necessary to consider the other questions in the case, as they are not likely to arise at another trial.

*Exceptions sustained : verdict set aside.*

All concurred.