PETER A. TURGEON *vs.* FREDERICK S. WOODWARD.

First Judicial District, Hartford, October Term, 1910.
HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

Declarations as to the location of boundaries between individual proprietors are hearsay, and are admissible in evidence only after it has been shown by the party in whose behalf the declaration is offered, that the declarant is dead, that he had peculiar means of knowledge touching the boundary, that his declaration was made before the controversy in suit arose, and that he had no interest to misrepresent the truth, that is, that he was not only disinterested pecuniarily, but also in the broader sense of being absolutely im-

partial and indifferent as to the subject-matter of the controversy on trial.

This exception to the admission of hearsay arose from necessity, and because the conditions precedent to the reception of such evidence, which the courts established, served, like a cross-examination, to test its reliability and trustworthiness.

A witness whose only knowledge of the subject-matter of inquiry has been gained through hearsay, cannot properly be asked to testify to it as a fact.

An inquiry as to the nature of the wood and timber upon the land in question is a competent method of testing, on cross-examination, the evidence of a witness that he had long been familiar with the tract; but if such inquiry is not relevant to the material issues in the case, its exclusion does not furnish ground for a new trial.

A declaration of a husband as to the boundaries of his wife's land is not admissible until his agency for her is shown, as well as the other prerequisites to the admission of such statements.

The interest of an adjoining owner in the boundary between his land and that of a neighbor is not such as to exclude, after his decease, his declaration in relation thereto, made before any controversy had arisen concerning it and under such circumstances as to compel the inference that it was an impartial and disinterested statement.

The act of an owner pointing out his bound at the time of his declaration relating to it is not admissible. Both act and declaration are self-serving.

Only fundamental and substantial errors which may do a litigant injustice can or ought to furnish ground for disturbing a judgment rendered in substantial accord with the principles of law.

Argued October 4th—decided December 16th, 1910.

ACTION to restrain the defendant from cutting trees on land alleged to be owned by the plaintiff, brought to and tried by the Superior Court in Windham County, *Gager, J.;* facts found and judgment rendered for the plaintiff, from which the defendant appealed. *Error and new trial ordered.*

The several lots of land to which reference is made in the opinion are shown upon the plan on the opposite page.

The plaintiff owns the "Turgeon lot" within the lines between the points *E. F. A.* and *G.* Weaver owns the "Weaver lot" within the lines between the points

*D. E. H.* and *C.;* and the defendant owns the tract of land to the east of the Turgeon and Weaver lots.

The plaintiff contends that the line *A. B.* is the

boundary line between him and the defendant; while the defendant insists that *A. G.* is the boundary line.

The parties concede that this boundary is to be fixed by finding whether the point *B.* or *G.*, as shown upon said plan, is the true southeast corner of the plaintiff's lot which was conveyed originally by Young to Gould, both being predecessors in title to the plaintiff.

The trespasses complained of were upon the tract included within the lines between the points *A. B.* and *G.*

*Patrick J. Danahey,* for the appellant (defendant).

*Charles E. Searls* and *Oliver E. Getty,* for the appellee (plaintiff).

WHEELER, J. The plaintiff and defendant are adjoining owners of certain tracts of woodland in Brooklyn. Each claims to be the owner of a part of this woodland, and as such the plaintiff seeks to restrain the defendant from further trespassing upon said strip. The issue is to be determined by finding the boundary line between the parties, this being the east bound of the plaintiff and the west bound of the defendant.

All of the grounds of appeal relate to rulings upon evidence. Those which invite more serious consideration are those excluding declarations of the defendant's predecessor in title, and those of an adjoining owner, relative to the location of this bound, made before this controversy arose, each declarant having since deceased.

A declaration as to boundaries between individual proprietors is hearsay, but it is one of the recognized exceptions to the hearsay rule whenever the legal conditions of its admission are present. *Wooster* v. *Butler,* 13 Conn. 309, 316; *South-West School District* v. *Williams,* 48 id. 504, 507; 1 Swift's Digest, s. P. 766.

We exclude hearsay statements since they have not met the test of the greatest ally of the truth,—a cross-examination. In some instances exceptions to this rule have grown up through necessity, from the knowledge that the only alternative is the practical abandonment of all attempt to prove certain kinds of facts unless the hearsay barrier is let down, and in the established and general knowledge that the great majority of human affairs are more or less affected by a reliance upon hearsay without imperilling their trustworthiness, or their efficiency and safety. Swift's Evidence, 121. *Murray* v. *Supreme Lodge,* 74 Conn. 715, 718, 52 Atl. 722, furnishes an example of an exception to the hear-

say rule, based upon necessity. Necessity alone could not have secured these exceptions to the hearsay rule, unless courts had been able to see that, with the adoption of certain safeguards as conditions precedent to the reception of such evidence, reliance might be placed upon it as reasonably to be trusted. In such way the law uses, in many cases, the only available evidence, and the truth benefits by its use.

The difficulty of proving private boundaries furnished the indispensable and urgent necessity for the admission of declarations of the deceased with respect to them. Many conveyances of agricultural land, and especially of woodland, do not describe the premises conveyed by courses and distances, nor even by fixed bounds. Lines cannot be run from them alone. When the private bounds are designated by landmarks, they are usually perishable in character and liable to soon disappear through decay and neglect, or in the further improvement and settlement of the country, so that the next generation has either forgotten, or never knew, them, or cannot find them.

"The law does not dispense with the sanction of an oath and the test of cross-examination as a prerequisite for the admission of verbal testimony, unless it discovers in the nature of the case some other sanction or test deemed equivalent for ascertaining the truth." LOOMIS, J., in *South-West School District* v. *Williams*, 48 Conn. 504, 507. Hence, in order to make such declaration equivalent in reliability and trustworthiness to the standard of ordinary testimony when subjected to cross-examination, certain conditions were attached to it as prerequisites to its admission. (1) It must be the declaration of the dead. (2) It must appear that the declarant would have been qualified as a witness to testify if present, and especially that he had peculiar means of knowing the boundary. 2 Wigm. on Ev.

§§ 1565–1568.   (3) It must have been made before the controversy in the trial of which the declaration offered had arisen.   Our court, through BALDWIN, J., in *Hamilton* v. *Smith*, 74 Conn. 374, 381, 382, 50 Atl. 884, said: "But the latter (referring to declarations of a decedent as to a boundary) having been uttered after the dispute which resulted in this suit had arisen, do not carry that absolute assurance of sincerity and impartiality on which is rested this peculiar exception to the rule excluding hearsay evidence."   (4) The declarant must have had no interest to misrepresent in making the declaration.   Jessel, M. R., in *Sugden* v. *St. Leonards*, L. R. 1 P. D. 154.

These conditions are the law's guaranty of the trustworthiness of such declarations, though the admission of such evidence "sometimes leads to falsehood, it more often tends to the establishment of truth." *Sasser* v. *Herring*, 3 Dev. (N. Car.) 340, 342.

By "no interest to misrepresent," is meant freedom from selfish motive or self-interest, or personal advantage; disinterested not merely in the sense of having no pecuniary interest, but in the broader sense of being absolutely impartial and indifferent to the controversy on trial.   Lexicographers so define the term, and in many decisions based upon an interpretation of this term as found in statutes, similar definitions are given. From earliest times we have excluded the declaration of the deceased owner of land as to his own boundary, for the reason that he was interested, and so the source of his title would forbid confidence to be placed in it. *Porter* v. *Warner*, 2 Root, 22; *Smith* v. *Martin*, 17 Conn. 399, 401.   For like reason, we have held similar declarations of one from whom the claimant derives title, to be inadmissible.   We said in *Smith* v. *Martin*, 17 Conn. 399, 401: "The presumption is, that the declarations of a party as to his title, made against his

interest, are true. But on the other hand, to allow
him to make declarations in support of his title, and
then give these declarations in evidence, would in ef-
fect be to allow him to make evidence in his favour,
at his pleasure. A similar effect would be produced,
if they might be proved by those standing in his situa-
tion, and claiming the same title which he did." The
tendency to misrepresentation because of interest makes
it unsafe to accept such evidence, since the guaranty of
its trustworthiness—its disinterestedness—which takes
the place of the cross-examination of the living wit-
ness, is absent. Such a declaration the law holds to be
presumptively made in misrepresentation. To render
such evidence admissible, the declarant must stand in
such position that the court cannot see any reason to
expect misrepresentation; he must not be a declarant
in support of his own title or one claimed through him.
In Massachusetts declarations of the deceased as
to boundaries are admitted if made by the declarant
when (1) on the land, engaged in pointing out the
bounds, and when (2) in possession as owner. The
rule is based upon the *res gestæ* or verbal acts doctrine.
With the first it is inconsistent, since it requires the
death of the declarant to be shown, and with the latter
it is equally so, since the purpose of the declaration
is to prove the fact stated, not to characterize an act.
The first limitation of the Massachusetts rule seems
to be followed in Maine, New Jersey, Pennsylvania
and the United States Supreme Court: the second lim-
itation in Maine and New Jersey. New Hampshire
and Vermont have repudiated both, while Wigmore
(Ev. Vol. 2, § 1567), and many others have refused to
follow it. The New Hampshire court, in apparent
disregard of its earlier decisions, has gone to the extreme
of holding that an owner's interest is to be weighed
as a fact in the case, and not as an existent condition

precedent to the admission of his declarations. *Lawrence* v. *Tennant*, 64 N. H. 532, 537, 15 Atl. 543; *Keefe* v. *Sullivan County Railroad*, 75 N. H. 116, 71 Atl. 379.

The strong tendency of courts to-day is to hold these four conditions prerequisite to the admission of such declarations. *Yow* v. *Hamilton*, 136 N. Car. 357, 358, 48 S. E. 782; *Sasser* v. *Herring*, 3 Dev. (N. Car.) 340; *Table Rock Lumber Co.* v. *Branch*, 150 N. Car. 240, 241, 63 S. E. 948; *Peters* v. *Tilghman*, 111 Md. 227, 235, 73 Atl. 726; *Child* v. *Kingsbury*, 46 Vt. 47, 54; 2 Wigm. on Ev. § 1566; 1 Greenl. on Ev. (16th Ed.) § 140*a;* Jones on Ev. (2d Ed.) § 309. The divergence of the authorities upon this point arises mainly through a failure to distinguish declarations of a deceased as to private boundaries, from declarations of a deceased relating to land (1) against his interest; *Hill* v. *Bennett*, 23 Conn. 363, 365; *Smith* v. *Martin*, 17 id. 399, 401; (2) as to reputation; *Kinney* v. *Farnsworth*, 17 Conn. 355, 363; (3) those so connected in time and purpose with an act done as to become a part of the *res gestœ*, so far at least as to show the intention of the deceased; *Spencer* v. *New York & N. E. R. Co.*, 62 Conn. 242, 248, 25 Atl. 350; *Noyes* v. *Ward*, 19 Conn. 250, 269; (4) those connected with an admission of title by a party or one under whom the party derives title; *Smith* v. *Martin*, 17 Conn. 399, 402; (5) those which repel a claim of title by adverse possession by showing the intent of an act; (6) those made as verbal acts coloring the nature of possession of land. Wigm. on Ev. §§ 1571, 1778*c; Sears* v. *Hayt*, 37 Conn. 406.

Let us consider in the light of these principles the declarations which the trial court excluded:—

(1) Young, the predecessor in title to plaintiff and defendant, owned all the premises claimed by either the plaintiff Turgeon, or the defendant Woodward, or the adjoining owner Weaver, and designated on the

plan as the Turgeon, Woodward and Weaver lots. On December 19th, 1887, Young conveyed, by warranty deed to Gould, the Turgeon lot; on January 9th, 1889, he conveyed by warranty deed the Weaver lot; and subsequently, the date not appearing in the record, he conveyed the Woodward lot. The daughter of Young, who was the wife of the defendant, was called as a witness for him and testified that at the time of the sale of the Turgeon lot to Gould, her father and Gould went to see the land, and that her father told her, twenty years before the date of the trial, which would be about two and a half years after the sale to Gould, where the bounds were. She was then asked what he said as to these bounds, and the court properly excluded the inquiry. Young, the owner, is presumed in law to have knowledge of the boundaries of his own land, *Smith* v. *Forrest*, 49 N. H. 230, 236: he was deceased: his statement was made long before this controversy arose, which, as appears from the record, was not earlier than December, 1909. At the time he is said to have made this statement he was the owner of the Woodward lot, and either owned the Weaver lot or had sold it shortly before to Weaver by warranty deed. In either case Young was interested; the law presuming that he, by reason of a desire to extend his own bounds, or to avoid liability on his covenant of warranty, might misrepresent the bounds he still owned, or those of the adjoining land which he had owned, and hence his statements made under such circumstances did not afford that assurance of sincerity and impartiality which is a necessary legal condition precedent to the admission of this kind of hearsay evidence.

(2) Subsequent to the sales to Gould and Weaver, the remainder of the tract, being the Woodward lot, was sold by Young, and, after several intermediary conveyances, passed on May 5th, 1900, to Mrs. Evans,

a daughter of Young, who subsequently sold to the defendant, and she when a witness in behalf of the defendant was asked as to where the bounds of this tract were. In her answer she attempted to give her knowledge based upon what her father had told her. Obviously the purpose of the examiner was to place before the court a fact of which the witness had no knowledge, and to avoid the rulings already had excluding such declarations. This method was improper. The witness could not testify to a fact, knowledge of which she had gained. through hearsay. The circumstances showing the guaranties of the law, prerequisite to the admission of declarations of deceased as to boundaries, should have been presented, and then the witness directly asked for the statement of the deceased and a ruling had. When this statement was made does not appear, but it does appear as that of a former owner offered in favor of a subsequent owner, and hence not disinterested, and on that ground also inadmissible.

(3) Sometime after Young had conveyed the Turgeon and Woodward plots, the witness Evans, husband of a daughter of Young, testified that in 1892 Young endeavored to sell him a tract of sprout land, and the court excluded the offer to show where this land was located so as to identify its bounds with those in controversy. The act of pointing out the land must have been associated with the declarations of Young as to its bounds. The declarations were inadmissible, for the act of pointing out cannot be distinguished from these as an act done by the deceased which the declarations characterize. Both act and declarations are self-serving. The act is not so free and impartial that we may say it is disinterested conduct and hence trustworthy.

(4) Baker testified in behalf of the plaintiff that he had known the land in question twenty-five years,

and on cross-examination he was not permitted to describe the nature of the wood and timber thereon. This inquiry was a competent method of testing his statement that he had been upon the land; but there is nothing in the record to indicate that either the witness' knowledge of the land, or the sort of timber growing thereon, were material issues in the case. The land was woodland, the issue was as to its bounds; the nature or character of the woodland is not material to that issue, so far as the record goes. The error in the exclusion of this testimony was not a substantial one, and none save fundamental and substantial errors which may do a litigant injustice can or ought to furnish ground for disturbing a judgment rendered in substantial accord with the principles of law.

(5) The testimony of Tillinghast and Armington, as to what bounds Weaver showed them of the premises in question, was excluded upon the theory that all such declarations were inadmissible against the plaintiff, rather than upon the ground which made their exclusion proper, that it had not appeared that they were made under such circumstances as to show that they were free from liability to misrepresentation.

(6) The plaintiff testified in his own behalf as to his ownership of the land in dispute and as to the location of its bounds, and on cross-examination was asked whether he had ever had a talk with Evans about these bounds. He replied "No." He was then asked if Evans had ever told him where the line was. This was rightly excluded. Evans was the husband of a former owner of the Woodward plot. No claim was made that the plaintiff participated in this talk in such way as by word or act to furnish evidence of an admission by him. The declaration of Evans as to the bounds could not be admitted until his agency for his wife had been shown, and the time of the statement proven, and the

circumstances showing the witness was clearly disinterested when he made them shown.

(7) The defendant Woodward testified in his own behalf that four years before the trial he lived as a tenant on a farm (the Woodward farm) adjoining the Weaver lot, and while Weaver was chopping wood in his own lot he asked him where the corner bound was between his leased farm and the Weaver lot, and Weaver showed him the corner bound. The court excluded Weaver's statement as to where the corner was, viz., at the point *G.*

Weaver is dead; he, as an owner, had abundant means to know his own bounds; the time of this occurrence was before this controversy arose, and the exclusion of the evidence, if justified, must rest upon the fact that the circumstances surrounding its making were such as to lead to the conclusion that the statement was made with liability to misrepresentation. The fact that the defendant is the witness to this must not be confused with the real question, which is, Was Weaver liable to misrepresent? That is to be decided by the facts existent at the time Weaver made his statement, not by those existent at the time Woodward testifies Weaver made them. The manner in which this statement came to be made is wholly natural. No controversy had then arisen as to this boundary, and Weaver's statement is that of an owner as to his bound at a time when that subject is not one of dispute. He is not a party to this action. No one was then claiming to restrict the land of either, and neither desired to have it located anywhere but its true place, nor is there a suggestion that Weaver was intent to maintain one bound over another. If Weaver misstates, the tenant of the Woodward lot is liable to get into immediate trouble with the owner of the Turgeon lot by cutting upon it. This tenant and Weaver were neighbors and

engaged in a neighborly and friendly talk designed to promote the peace of the neighborhood. Weaver cannot be conceived to have been making evidence in favor of a party to a controversy not yet arisen. In weighing motives we look at the results to be obtained by the conduct used. In order to crowd his bound to the north to the point *G*, so as to add to his possessions in that direction about an acre of woodland, is it likely Weaver would originate a claim to the land and support it by false declarations as to the bounds? Men do not ordinarily so act in relation to their property interests unless impelled by adequate motive. If Weaver were offering these statements in his own behalf his interest would make it unsafe to receive them; when they are offered by another, and the circumstances indicate they were not the fruit of misrepresentation, they are not interested statements and are admissible, since it is to that sort of evidence in the proof of a bound we must, of necessity, go, in the ascertainment of the truth.

The interest of an adjoining owner in the boundary between his land and a neighbor's is not such as to exclude, after his decease, his declaration in relation thereto made before a controversy had arisen concerning this, and when the circumstances surrounding its making are such as to forbid a conclusion that it may have been made through misrepresentation, and compel the conclusion that it was impartial and disinterested. *Child* v. *Kingsbury*, 46 Vt. 47, 54.

The complete disinterestedness of Weaver is established when we consider that if his statement as to the corner bound *G* is true, the defendant would have gained about five acres of Weaver's woodland, and only lost one acre, while if the plaintiff's claim is right, Weaver would retain the five acres and lose the one acre. Seldom will a declaration of a deceased adjoining

owner relative to a boundary appear equally free from taint of interest.

The exclusion of the declaration of Weaver was erroneous and manifestly prejudicial to the defendant. Other assignments of error are unimportant.

There is error and a new trial is ordered.

In this opinion the other judges concurred.