DONALD M. ROMPE ET AL. *v.* DONALD J. KING ET AL.

BOGDANSKI, C. J., PETERS, HEALEY, PARSKEY and ARMENTANO, Js.

Argued June 10—decision released August 18, 1981

*Frank J. Dumark,* for the appellant (named defendant).

*Robert C. Flanagan,* for the appellees (plaintiffs).

PARSKEY, J.  The plaintiffs and the named defendant (hereinafter the defendant) are the owners of adjoining parcels of land on route 1 in the town of Branford, the defendant's land being located to the west of land owned by the plaintiffs.  The dispute which is the subject of this appeal arose over their common boundary.  Both sides agree that according to their instruments of title that boundary line is the center line of a brook.  The plaintiffs claimed that the brook had been located at a certain distance westerly of its present location and that the defendant, during the process of developing his own land, pushed the brook to the east as a consequence of which the plaintiffs have been deprived of two tenths of an acre of land.  The defendant claimed that the brook remained at its original location.  In this action to quiet title the court found for the plaintiffs and the defendant has appealed claiming that (1) the court erred in admitting into evidence certain maps prepared by John Pulver, a land sur-

veyor, (2) the plaintiffs failed to meet their burden of proof, (3) the memorandum of decision failed to state a factual basis for its decision and its conclusions were unsupported by the evidence and (4) the evidence was insufficient to establish the plaintiffs' title to the land in question.

## I

The court admitted into evidence, over the defendant's objection, three maps prepared by John W. Pulver, a registered land surveyor. These maps were prepared at the request of Elnor Hoadley Davis, the plaintiffs' predecessor in title. One map, Exhibit B, dated February 9, 1959, had been prepared in connection with the transfer of a portion of the Davis property to the plaintiffs by deed dated September 25, 1959. Another map, Exhibit C, of the entire Davis property was a certified copy of a map filed in the office of the town clerk of Branford on July 19, 1957. A third map, Exhibit D, filed September 9, 1957, is similar to Exhibit C except for a change in the designation of the westerly boundary line at a point beyond and to the north of the westerly boundary line shown in Exhibit B. The basis of the defendant's objection to the admissibility of these maps was hearsay.

The rule which excludes statements made out of court which are offered to establish the truth of the facts contained in the statements applies both to oral and written statements. *Cherniske* v. *Jajer,* 171 Conn. 372, 376, 370 A.2d 981 (1976). The form of the written statement is immaterial. Thus the maps which ultimately became Exhibits B, C and D would run afoul of the hearsay rule unless they were admissible under an exception. An exception

does exist in cases involving the location of boundaries. In such cases "the admission of hearsay evidence is permissible if (1) the declarant has died, (2) the declarant would have been qualified as a witness to testify if present, and especially that he had peculiar means of knowing the boundary, (3) the statement was made before the controversy, in the trial of which the declaration is offered, had arisen, and (4) the declarant had no interest to misrepresent in making the declaration." *DiMaggio* v. *Cannon,* 165 Conn. 19, 22–23, 327 A.2d 561 (1973); *Turgeon* v. *Woodward,* 83 Conn. 537, 541–42, 78 A. 577 (1910). Once these conditions have been satisfied, the fact that the declaration is contained in a map or survey will not preclude it from being admitted into evidence. *Morton* v. *Folger,* 15 Cal. 275, 280 (1860); *Smith* v. *Forrest,* 49 N.H. 230, 239 (1870); 5 Wigmore, Evidence (Chadbourn Rev.) § 1570.

It is apparent from the evidence that the first three conditions have been met. That Pulver died in 1972 and that the maps in question were prepared by him many years before any controversy arose regarding the location of the westerly boundary of the plaintiffs' property are undisputed. Nor can it be seriously doubted that Pulver, as a registered land surveyor, would have been qualified to testify as an expert witness and that, based on the information acquired in connection with the surveys he conducted in order to prepare the three maps in question, he had peculiar means of knowing the location of the disputed boundary. The plaintiff Donald Rompe testified that in the spring of 1959, at a time when the plaintiffs had an option to purchase the subject property, he and Pulver walked the property, stood on a culvert which is located on

the southwesterly portion of the property and observed the direction of flow of the brook which then represented the westerly landmark.

We are thus left with the fourth condition, i.e., Pulver's interest, if any, to misrepresent. "By 'no interest to misrepresent,' is meant freedom from selfish motive or self-interest, or personal advantage; disinterested not merely in the sense of having no pecuniary interest, but in the broader sense of being absolutely impartial and indifferent to the controversy on trial." *Turgeon* v. *Woodward,* supra, 542. Pulver was hired by Davis to survey and to map the portion of her property which she later conveyed to the plaintiffs. There is nothing in the record to suggest that in preparing the map Pulver had anything other than a professional interest to plot the area to be conveyed. The westerly boundary line was of no special significance to him. He had nothing to gain or to lose by drawing it anywhere except where it actually was. The deed from Davis to the plaintiffs described the property conveyed by courses and distances. The dimensions used in the deed correspond precisely with those which appear on Exhibit B. The defendant's challenge to the admission of Exhibit B on the basis of the declarant's interest and partiality is without merit.

With respect to Exhibits C and D, the information contained thereon is even more revealing. Both exhibits are maps of the entire Davis property. Both were filed in the town clerk's office of Branford. Under § 224d of the 1955 Cumulative Supplement[1]

---

[1] "[General Statutes (Cum. Sup. 1955)] Sec. 224d. MAPS OF SURVEYS AND PLOTS. When any person having an interest in land has caused it to be surveyed and plotted or laid out into lots and projected highways, and a map made, which map shall bear the seal of

(now General Statutes § 7-31), whenever an owner of property had caused it to be surveyed and a map made, the map was required to bear the seal of the surveyor and a certification that it is substantially correct to the degree of accuracy shown thereon in order to be filed with the town clerk. Since it is presumed that a public officer properly performs his duty unless the contrary appears; *Parham* v. *Warden*, 172 Conn. 126, 134, 374 A.2d 137 (1976); we may assume that these maps would not have been received for filing unless they satisfied the requirements of the statute. From all the evidence before it the trial court was justified in concluding that, the prerequisites having been satisfied, the three maps were admissible as exceptions to the hearsay rule.

## II

The defendant next claims that the plaintiffs did not meet their burden of proof. The thrust of the

the surveyor and a certification that it is substantially correct to the degree of accuracy shown thereon, and when such projected highways have been approved by the municipal authorities empowered to approve the layout of highways, the map may be received and placed on file in the office of the clerk of the town in which such land is situated and shall thereupon be deemed a part of the deeds referring thereto, and may be produced in court accordingly; and such town clerk shall, upon request, make and certify copies of any such map on file in his office. The town clerk shall number such map and keep, in a book prepared for the purpose, a record thereof, including the number, the date of filing and the name of each of the owners of such land, and shall receive for such services the sum of one dollar and fifty cents. All maps shall be on a good quality of white drawing paper mounted on muslin or on a good quality of tracing cloth or white print on cloth, and shall be not more than thirty-seven inches long or twenty-five inches wide. The selectmen of each town shall cause to be provided cases containing cards thirty-seven inches long and twenty-five inches wide, upon which maps may be pasted as they are filed, or books of the same dimensions in which such maps may be readily affixed."

defendant's argument is that the plaintiffs offered in evidence only the deed from Davis to them and failed to offer any other deeds in the chain of title that would have established the validity of the title of the plaintiffs' grantor. While it is true that customarily in an action to quiet title, deeds in the chain going back many years are offered and that the plaintiffs may have been well advised to have followed the customary practice in this case, their failure to do so is not fatal. "How far back of his deed of acquisition one claiming title to property should go in proving his chain of title is not fixed by any particular rule. It really depends upon how far back careful preparation dictates he should go in order best to present his case in light of the claims of adverse parties." *Loewenberg* v. *Wallace,* 147 Conn. 689, 697, 166 A.2d 150 (1960). Since there was general agreement that the common boundary was the center line of a brook, and since one of the plaintiffs had observed the general location of the brook prior to the purchase and also observed the defendant engage in activity on his land which, according to his testimony, pushed the brook to its present location, the narrow issue involved in the dispute was such that the plaintiffs may have felt that putting on display a full gamut of deeds in a chain of title would have served no useful purpose. In any event, the plaintiffs purchased their property in 1959 and were in possession of it under their deed at the institution of the suit in 1977. A person who claims title to another's land by adverse possession need establish the elements of adverse possession for a period of only fifteen years. He need not concern himself with anything that occurred prior to the commencement of the fifteen-year period. It would be passing strange if, as a matter of law, more was required of

a person, as in this case, who was in possession of property for more than seventeen years under a deed of title.

## III

The defendant next claims that the court's memorandum of decision failed to state the factual basis of its decision. If this claim were sound, this court could resort to the remedy provided under Practice Book § 3060D. This section seeks to aid this court in discharging its duty of judicial review.[2] Examining the trial court's memorandum of decision in that light, we find it completely adequate to enable us to render a proper disposition of this case. The defendant's claim that the court's conclusions are unsupported we deal with infra.

## IV

Finally the defendant claims that on the whole record the decision of the trial court is clearly erroneous. Our review of this claim "involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported or whether, in light of the evidence and the pleadings in the whole record, those

---

[2] Practice Book § 3060B requires the trial court to set forth either in its oral or written decision the factual basis of its decision. This section is designed to enable the parties as well as this court to have a better understanding of the basis of the trial court's action. If the trial court fails to articulate sufficiently the factual basis for its decision, then this court under Section 3060D "may remand the case for further articulation of the basis of the trial court's decision."

facts are clearly erroneous." *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

Although the facts were in dispute, there was a plethora of evidence, if credited, to support the trial court's conclusion. Showing that the brook, which was the common boundary, ran in a northwesterly direction from a culvert on route 1, in 1959, instead of the northeasterly direction which is its present direction of flow, were the Pulver 1957 maps (Exhibits C and D), the Pulver 1959 map (Exhibit B), a United States Geodetic Map made in 1949 and amended in 1954 (Exhibit G) and a State Highway Map (Exhibit I) dated 1955. Of particular interest is Exhibit D. This 1957 map delineates the westerly boundary line of the Elnor Hoadley Davis property as the center line of a brook running northwesterly from a culvert on route 1 for a distance of 442 feet. It also identifies the westerly owner as Castellon Realty, Inc. The defendant acquired his interest in his property in 1964 by deed from Castellon Realty, Inc. This deed describes the easterly boundary line of the defendant's property as the center line of a brook along property formerly owned by the plaintiffs' predecessor in title and being 442 feet in length. Since there is no evidence that the location of the brook was in dispute between the adjoining owners before the present controversy arose, the fact that the measurement of the brook was precisely the same both on the Pulver map and the defendant's deed can hardly be ascribed to coincidence.

In addition to the documentary evidence, the plaintiff Donald Rompe testified that in 1959 before he and his brother purchased the property in question he walked the property with the surveyor, John

Pulver, and he and Pulver stood on the culvert and observed that the brook flowed in a northwesterly direction.

That the brook was moved after the defendant bought his property in 1964 was demonstrated in a number of ways. Donald Rompe testified that before its purchase by the defendant the King parcel was a large hilly piece of property, a mountain of rock and that the defendant not only cleared the property but also removed the mount by blasting the rock and bulldozing both the rock and the earth to the east in the process moving the brook ahead of the fill. The defendant on the witness stand admitted that he engaged in the bulldozing operation described by Donald Rompe but asserted that the operation stopped short of reaching the brook. A comparison of two United States Geodetic Maps (Exhibits G and H) introduced by the plaintiffs indicates that, between 1954 and 1967 (the respective dates of the maps), the flow of the brook shifted away from its northwesterly direction toward a northeasterly flow. There was also testimony from Bernard Godfrey, a registered land surveyor, who surveyed the plaintiffs' property and who testified that with the westerly line situated as it appears on the Pulver 1959 map (Exhibit B), the plaintiffs' property contained 1.1 acres whereas with the westerly line at its present location the same property was reduced to nine tenths of an acre. Godfrey also testified that the brook as it was originally located on the Pulver map (Exhibit B) had been obliterated by fill and that this fill extended to a point just short of the present location of the brook.

We have stated on numerous occasions that it is not the function of this court to retry the case. Nor

is it our role to pick and choose among the witnesses which the trier is at liberty to believe. Ultimately it is for the trier to accept or reject all or part of any expert's opinion; *Hutensky* v. *Avon,* 163 Conn. 433, 438, 311 A.2d 92 (1972); and where the opinions of experts differ, to accept that opinion which appears more credible. *F. P. Carabillo Construction Co.* v. *Covenant Ins. Co.,* 172 Conn. 564, 566, 375 A.2d 1029 (1977). On examination of the evidence in this case, we cannot conclude that the court's evaluation of the evidence was not within the limits of a reasonable evaluation of credibility and a proper allocation of weight to differing expert testimony. Upon the evidence presented, the court was not in error in its conclusion that the plaintiffs had established their ownership of the land in question by record title.

There is no error.

In this opinion the other judges concurred.